**GRAND STREET ARTISTS,**
**et al., Plaintiffs,**

v.

**GENERAL ELECTRIC COMPANY,**
**et al., Defendants.**

**Parker, et al., Plaintiffs,**

v.

**General Electric Company,**
**et al., Defendants.**

**Civil No. 96–3774 (HAA).**

United States District Court,
D. New Jersey.

Dec. 18, 1998.

Philip Elberg, Medvin & Elberg, Newark, NJ, Helene C. Herbert, Herbert & Weiss, Wood–Ridge, NJ, for Katherine Parker, Gerald Norton, Janet Filomeno and Louis Nel.

Louis Pashman, Pashman Stein, Hackensack, NJ, Kenneth Hollenbeck, Scarinci & Hollenbeck, Secaucus, NJ, for Grand Street Artists and J. Matthew Schley.

James A. Moss, Herrick, Feinstein, Princeton, NJ, for General Electric Co.

Robert Joseph Gogick, West Orange, NJ, for Jenny Engineering Corp.

Ruth D. Kirshner, Landman, Corsi, Ballaine & Ford, Newark, NJ, for Compliance Management, Inc.

Peter J. Herzberg, Pitney, Hardin, Kipp, & Szuch, Morristown, NJ, for Rogers Environmental Management, Inc.

Karen A. Confoy, Sterns & Weinroth, PC, Trenton, NJ, for John J. Pascale.

Michael Edelson, Hellring, Lindeman, Goldstein & Siegal, Newark, NJ, for David P. Pascale and Sherill Pascale.

Richard Mark Mandel, O'Brien, Liotta & Mandel, Union, NJ, for Enpak Services Co., Inc.

Christopher L. Musmanno, Maloof, Lebowitz, Connahan & Oleske, Chatham, NJ, for Environmental Waste Management Associates, Inc.

John L. Slimm, Marshall, Dennehey, Warner, Coleman and Goggin, Cherry Hill, NJ, for Chasan, Leyner, Tarrant & Lamparello.

HAROLD A. ACKERMAN, District Judge.

This matter comes before the court upon a motion for judgment on the pleadings or, in the alternative, a motion for summary judgment by the defendant, General Electric Corporation ("GE"), which is joined in its motion by defendants John and David Pascale (together with GE the "Defendants"). The Defendants' motion seeks entry of a declaratory judgment finding the plaintiffs who are individual-unit owners [1] ("Owner–Plaintiffs") liable under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"). For reasons detailed below, Defendants' motion for summary judgment is **GRANTED.**

## I. Background

For purposes of the instant motion, the relevant facts are as follows. On August 4, 1993, a New Jersey partnership formed by artists, Grand Street Artists ("GSA"), purchased the premises at 720–732 Grand Street, Hoboken, New Jersey (the "Facility") which formerly had been used for industrial purposes. The intention of the GSA partnership (the "Partnership") was to convert the premises into residential condominium units and working lofts and, ultimately, to sell such

---

1. Presently before the court in this motion are two consolidated complaints. The first complaint was brought by Grand Street Artists et al., which includes GSA as well as a number of individual unit-owners and their children (No. 96–3775; hereinafter Partners' Complaint). The second complaint was brought by Katherine Parker et al. (No. 96–3774; hereinafter "Parker Complaint"). Defendants' motion is directed at

twenty-three unit-owner plaintiffs: J. Matthew Schley, Barabara Henry, China Marks, John Steadwell, Meredith Lippman, Nora Jacobson, Stephen Keough, Serena Bocchino, Michael Solter, Corinne Mulrenan, Sultan Catto, Neslihan Catto, Mark Graham, Myra Graham, Eileen Hoffman, Robert Vichnis, Tova Beck Friedman, Curtis Crystal, Nancy Jessup, Katherine Parker, Gerald Norton, Janet Filomeno, and Louis Nel.

units to the partners in their individual capacities. (Stein Aff., Exh. J, p. 1.) Under the GSA partnership agreement (the "Partnership Agreement"), "... the Partnership was to be comprised 'of 17 ownership interests,' with each 'Partnership Interest' giving each individual partner the right to acquire one condominium unit." (Plaintiffs' Memorandum of Law in Opposition to the Motion of Defendant General Electric Company for Partial Summary Judgment ("Pl.Mem."), at 15 (quoting Partnership Agreement).) The Partnership Agreement also provided that each partner "covenants and agrees that, upon the conversion of the Property to the condominium form of ownership, he will purchase the unit specified on the building plan and list annexed ... as Exhibit H ... [to the Partnership Agreement]." (Pl. Mem., at 15 (quoting Partnership Agreement).) Ultimately, all but two of the units were sold by GSA to the Owner–Plaintiffs.[2] All of such transactions took place after May 1, 1995. (GE's Statement of Material Facts Not in Dispute ("GE's MFND"), ¶ 26 not disputed by Owner–Plaintiffs.)

Prior to completing the sale and transfer of ownership of the individual units from GSA to the Owner–Plaintiffs, GSA and Owner–Plaintiffs became aware of the presence of mercury on the premises. Although there is a factual dispute as to when GSA and Owner–Plaintiffs first became aware of the presence of mercury, the parties agree that by May 1, 1995, GSA and the Owner–Plaintiffs were aware of the mercury, its presence was discussed in at least five GSA partnership meetings, and GSA had hired Defendant EN-PAK Services to investigate the presence of mercury on the premises prior to that date. (GE's MFND ¶¶ 18–25, not disputed by Owner–Plaintiffs.) While it was at first believed that remedial steps could be taken to contain the mercury, the artists were ultimately forced to evacuate. On January 3, 1996, the Agency for Toxic Substances Disease Registry concluded that an imminent health hazard existed and on January 4, 1996 the Hoboken Health Department found the premises unfit for human habitation. (Pl. Mem. of Law at 5.) In July of 1997, the EPA recommended that the premises be demolished, the residents be permanently relocated, and future monitoring and sampling of the soil and ground water be carried out. (Id. at 5 (citing Stein Aff., Exh. A).) The implementation of the EPA's recommendations was estimated to cost $13.9 million. (Id. at 5 (citing Stein Aff., Exh. A).)

Thereafter, the individual artists (Owner–Plaintiffs) and GSA brought suit against a number of defendants alleging violations of CERCLA, the Environmental Clean Up Responsibility Act ("ECRA"), the New Jersey Spill Compensation and Control Act, the New Jersey Consumer Fraud Act, and common law claims for strict liability, negligence, fraud, recision, public nuisance, and punitive damages. The defendants are environmental consultants, the law firm retained by GSA for advice on the purchase of the facility, and prior owners of the premises, including GE, Cooper–Hewitt Electric Corp., Quality Tool & Die Co., John Pascale and David P. Pascale. GE has filed, and John and David Pascale have joined, in the instant motion.

In Count Two of their complaints, Owner–Plaintiffs seek declaratory judgment stating that they are each entitled to the "innocent owner" defense and, thus, are not liable under CERCLA. The First Counterclaim of GE's Amended Answer and Counterclaim seeks declaratory judgment finding that Owner–Plaintiffs are liable under CERCLA. In the instant motion, Defendants move for a judgment on the pleadings or, in the alternative, summary judgment finding Owner–Plaintiffs liable under CERCLA. Since granting Defendants' motion for summary judgment requires an inquiry beyond the pleadings, the court will consider Defendants' motion for summary judgment, and finds the court's holding regarding that motion dispositive as to Defendants' motion for a judgment on the pleadings.

## II. Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment may be granted only if the pleadings, supporting papers,

---

**2.** Plaintiffs Shun–Yi Chen and Ching–Huang Chung did not close on Unit 5D. (Partners' Complaint ¶ 19.) Plaintiff Robert Schiffmacher did not close on the Townhouse. (Id. at ¶ 20.)

affidavits, and admissions on file, when viewed with all inferences in favor of the nonmoving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *See also Todaro v. Bowman*, 872 F.2d 43, 46 (3d Cir.1989); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.), *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). In other words, "summary judgment may be granted if the movant shows that there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Indiana Hosp.*, 843 F.2d 139, 143 (3d Cir.), *cert. denied*, 488 U.S. 870, 109 S.Ct. 178, 102 L.Ed.2d 147 (1988).

The substantive law will identify which facts are "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Therefore, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue. *Id.*

The party seeking summary judgment always bears the initial burden of production, i.e., of making a *prima facie* showing that it is entitled to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This may be done either by demonstrating there is no genuine issue of fact and that as a matter of law the moving party must prevail, or by demonstrating the nonmoving party has not produced evidence relating to an essential element of the issue for which it bears the burden. *Id.* at 322–23, 106 S.Ct. 2548. Once either showing is made, the burden shifts to the nonmoving party who must demonstrate facts supporting each element for which it bears the burden as well as establish the existence of genuine issues of material fact. *Id.* at 324, 106 S.Ct. 2548.

However, at the summary judgment stage, a court may not weigh the evidence or make credibility determinations—these tasks are left to the fact finder. *See Petruzzi's IGA v. Darling–Delaware*, 998 F.2d 1224, 1230 (3d Cir.), *cert. denied*, 510 U.S. 994, 114 S.Ct. 554, 126 L.Ed.2d 455 (1993). Therefore, to raise a genuine issue of material fact, " 'the [summary judgment] opponent need not match, item for item, each piece of evidence proffered by the movant,' but simply must exceed the 'mere scintilla' standard." *Id. See also Anderson*, 477 U.S. at 252, 106 S.Ct. 2505 ("The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]."). "Although a 'scintilla of evidence' supporting the nonmovant's case is not sufficient to defeat a motion for summary judgment, it is clear that a district court should not weigh evidence and determine the truth of the matter itself, but instead should determine whether there is a genuine issue for trial." *Country Floors, Inc. v. A Partnership Composed of Gepner*, 930 F.2d 1056, 1061–62 (3d Cir.1991). If the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law, then summary judgment may be granted.

## III. Discussion

■ Congress enacted CERCLA to accomplish "two principal goals . . .—to facilitate the cleanup of potentially dangerous hazardous waste sites and to force polluters to pay the costs associated with their pollution." *United States v. CDMG Realty Co.*, 96 F.3d 706, 712 (3d Cir.1996) (citations omitted). To that end, CERCLA was drafted as a strict liability statue with few affirmative defenses. Under section 9607, CERCLA liability is imposed where the plaintiff establishes the following four elements: "1) the defendant falls within one of the four categories of responsible parties;[3] 2) the hazardous

---

**3.** Under 42 U.S.C. § 9607(a) responsible parties include:

"(1) the owner or operator of a vessel or a facility;

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

substances are disposed of at a 'facility' [as defined in the statute]; 3) there is a release or threatened release of hazardous substances from the facility into the environment; and 4) the release causes the incurrence of 'response costs.'" *United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 259 (3d Cir.1992). In keeping with CERCLA's remedial goals, courts have construed liability under the statute liberally and affirmative defenses narrowly. *See United States v. Witco Corp.*, 865 F.Supp. 245 (E.D.Pa.1994); *Lincoln Properties, Ltd. v. Higgins*, 823 F.Supp. 1528, 1536 (E.D.Cal.1992). A right of contribution under § 9613(f), however, operates to ease the potential burdens of liable parties. "Once liability is established, a party's share of liability is apportioned according to those equitable factors the court deems appropriate." *Gould, Inc. v. A & M Battery & Tire Serv.*, 987 F.Supp. 353, 366 (M.D.Pa. 1997) (citing *Farmland Industries, Inc. v. Colorado & Eastern R.R.*, 944 F.Supp. 1492, 1498 (D.Colo.1996)). Indeed, CERCLA explicitly authorizes federal courts to consider equitable factors in contribution actions. *See* 42 U.S.C. § 9613(f) (1988).

■ Owner–Plaintiffs concede that as current owners of units of the facility they each fall within the category of parties that may be held CERCLA liable.[4] They contend, however, that they are each entitled to the "innocent owner" affirmative defense. A party asserting the "innocent owner" defense must prove the following elements by a preponderance of the evidence:

1) Another party was the sole cause of the release of hazardous substances and the damages caused thereby; 2) The purchasing landowner did not actually know or have reason to know of the presence of the

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances and,

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or threatened release which causes the incurrence of response costs, of a hazardous substance . . . ."

hazardous substance *at the time of acquisition;* 3) The purchasing landowner undertook appropriate inquiry at the time of acquisition, in order to minimize liability; and 4) The purchasing landowner exercised due care once the hazardous substance was discovered.

*M & M Realty Co. v. Eberton Terminal Corp.*, 977 F.Supp. 683, 686 ( M.D.Pa.1997) (citing 42 U.S.C. §§ 9607(b)(3), 9607(35)(A)). In the instant motion, Defendants assert that the Owner–Plaintiffs had actual knowledge of the presence of mercury at the Facility when they acquired titles to their individual units and, thus, are not entitled to the "innocent owner" defense.

■ The facts material to this issue are not in dispute: the date the Partnership acquired title to the facility, the dates each Owner–Plaintiff acquired title to his or her unit, and the date by which the Owner–Plaintiffs became aware of mercury on the premises are not contested. The parties disagree, however, as to which date of acquisition should be considered operative for purposes of the "innocent owner" defense. Defendants contend that the Owner–Plaintiffs as individuals "acquired" the premises on the date each Owner–Plaintiff received title to his or her individual unit. Owner–Plaintiffs, however, argue that for purposes of the "innocent owner" defense, the operative date is the date the Partnership acquired title to the premises as a whole. After a careful review of the text and structure of CERCLA, this court holds that in the instant case the operative dates are the dates ownership of each unit was transferred from the Partnership to each Owner–Plaintiffs in his or her individual capaci-

4. The parties agree that the four elements necessary to establish CERCLA liability are present in the instant case. Specifically, Owner–Plaintiffs concede that: 1) as current owners of the facility they may be deemed responsible parties; 2) the site is a "facility" within the meaning of CERCLA and hazardous substances are disposed of at the "facility"; 3) there is a "release" or threatened release of hazardous substances from the facility into the environment; and 4) the release has caused the incurrence of "response costs".

ty. *See infra.* This holding is based upon the plain meaning of § 9601(35)(A) and § 9607(b)(3) which create the "innocent owner" defense, judicial interpretation of CERCLA, and relevant New Jersey partnership law. *See infra.* The court's holding is also consistent with the purpose and structure of CERCLA's liability scheme. *See infra.*

The "innocent owner" defense was created by the 1986 Superfund Amendments and Reorganization Act (SARA), Pub.L. No. 99–499, 100 Stat. 1613 (1986) (codified at 42 U.S.C. §§ 9601–9675). Instead of creating a separate affirmative defense, SARA expanded the "third party defense" set forth in § 9607(b) to create the "innocent owner" defense. § 9601(b)(3) creates a defense to liability if a defendant can prove that " . . . the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by . . . an act or omission of a third party other an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship existing, directly or indirectly, with the defendant. . . ." 42 U.S.C. § 9607(b)(3). Thus, prior to the enactment of SARA, the third-party defense was not available to a defendant if the defendant was in the chain of title with the third party. *See CDMG Realty Co.,* 96 F.3d at 712. Pursuant to SARA, a new definition of contractual relationship was included in § 9601(35)(A) creating the "innocent owner" defense. § 9601(35)(A) reads in part:

> the term "contractual relationship", for the purpose of section 9607(b)(3) of this title includes, but is not limited to, land contracts, deeds or other instruments transferring title or possession, unless the real property on which the facility concerned is located was acquired by the defendant after the disposal or placement of the hazardous substance on, in or at the facility, and . . . [a]t the time the defendant acquired the facility the defendant did not know or have reason to know that any hazardous substance which is the subject of the release or threatened release was disposed of on, in or at the facility.

42 U.S.C. § 9601(35)(A). As stated in the Congressional Committee Report in the Superfund Improvement Act of 1985, "[t]his new definition of contractual relationship is intended to clarify and confirm that under limited circumstances landowners who acquire property without knowing of any contamination at the site and without reason to know of any contamination . . . may have a defense to liability under section 107. . . ." H.R. Conf. Rep. 99–962 (1986). Thus, the court turns to the language of § 9601(35)(A) to determine in the instant case whether the operative date for purposes of each Owner–Plaintiff's "innocent owner" defense is the date the Partnership acquired the facility or the dates each Owner–Plaintiff acquired his or her individual unit. *See Tippins Inc. v. USX Corp.,* 37 F.3d 87, 92 (3d Cir.1994)("It is axiomatic that the starting point for interpreting a statute is the language of the statute itself.")

CERCLA does not define the word "acquire." In the absence of any special meaning, the ordinary meaning of the word should be assigned. Random House Dictionary of the English Language defines the verb to acquire as "to come into possession or ownership of; get as one's own: *to acquire property.*" Random House Dictionary of the English Language p. 18 (2d ed.1987). This definition is particularly instructive given the context in which the word appears in § 9601(35)(A). "Meaning derives from context, hence the constructional canon noscitur a sociis, which states that one may infer meaning by examine the surrounding words." *CDMG,* 96 F.3d at 714. It is clear from the plain language of § 9601(35)(A) that the verb "acquired" refers to coming into possession or ownership of real property. Furthermore, the plain language of § 9601(35)(A) indicates that "at the time acquired" refers to the point in time when the defendant became the owner of the facility. This interpretation is consistent with CERCLA's liability scheme.

As discussed above, CERCLA liability is based in part on principles of ownership of real property; CERCLA imposes liability on the current owners of a facility as well as past owners who owned the facility at the time hazardous substances were disposed of

at the facility. In interpreting the meaning of "owner," courts have looked to the plain meaning of the statute and have held that "owner" should be given its ordinary meaning. *See Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1497 (11th Cir. 1996). As discussed above, the "innocent owner" defense seeks to carve out a safe haven for those who became owners without knowledge that the site they purchased contained hazardous substances. Thus, logic dictates that congress intended for "at the time acquired" to be a reference to the point in time that the defendant became the owner of the property—the point when liability attaches for purposes of CERCLA. Furthermore, such an intention is reflected in the legislative history cited above.

■ Owner–Plaintiffs argue that their status as partners[5] when the Partnership purchased the facility on August 8, 1993 changes the date they became owners in their individual capacities of their respective units. As already mentioned, the court can not agree with this assertion. While partnership concepts relevant to this case are not directly addressed by CERCLA and few courts have had to address such issues, at least one circuit has clearly delineated how partnership concepts should interact with CERCLA. In *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489 (11th Cir.1996), the Eleventh Circuit addressed whether limited partners in an Alabama limited partnership were "owners" of a facility, title of which was held by the limited partnership. After examining the language of § 9607(a)(1) and determining that "owner" has "no special meaning under CERCLA," the court turned to relevant state law. Citing *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), for " . . . the settled principle that property interests and rights are defined by state law", the court held that " . . . in the absence of any unique definition of 'ownership' in CERCLA we look to Alabama law to define the ownership interest of the limited partners in the Site." *Id.* at 1498. Since this court has already found that "acquire" has no "unique definition," the court

will look to New Jersey law in defining the property interests involved in the instant case. Under New Jersey partnership law, title to real property is held by the partnership as is any corresponding real property interest. *See* N.J. Stat. Ann. § 42:1–8 (West 1998). Furthermore, the interest of a partner is limited to a personal property interest in the partnership itself; partners hold no real property interest in real property owned by the partnership. *See* N.J. Stat. Ann. § 42:1–26 (West 1998) Thus, when a partnership acquires title to real property, the partners, as individuals, do not acquire any real property interest in the property. It is only when a partner, in his or her individual capacity, chooses to purchase the real property from the partnership and title is transferred to said individual that he or she can be said to own, in a legal sense, and thus have acquired that real property. Plaintiffs argue that while "as a technical matter legal title to the premises was vested in the Partnership, each of the general partners owned a portion of the Partnership to the extent of their respective interests and, as contract vendees under the partnership were the equitable and beneficial owners of their respective units." (Pl. Mem. at 35) Owner–Plaintiffs cite various facts to support their theory such as the undisputed intention of GSA to sell the individual units to the partners, both the rights and obligations of the partners to buy such units, and their choice of financing. Owner–Plaintiffs, however, fail to cite any New Jersey partnership law to support their position; none of the cases cited speak to whether a partner has an individual real property interest in specific partnership property. Thus, this court holds that in the case at bar, while the partnership purchased the Facility on August 8, 1993, the partners as individuals did not purchase the Facility until title to each unit passed to the respective individual. As of those dates, each Owner–Plaintiff had knowledge of the presence of mercury at the Facility. Consequently, the Owner–Plaintiffs are not entitled to the "innocent owner" defense.

---

**5.** All Owner–Plaintiffs subject to this motion were partners of GSA with the exception of Myra Graham, who owns her unit jointly with a former partner of GSA, Mark Graham.

The court recognizes that in the instant case given the intention of GSA to convert the premises and sell the individual units to the partners themselves, strict adherence to CERCLA law may appear to lead to an inequitable result. As discussed above, however, the structure of CERCLA contemplates that its strict liability construction be tempered with the statutory right of contribution set forth in § 9613(f). Thus, the court holds that under CERCLA such equitable factors are more appropriately considered when adjudicating the contribution claim at which point liability will be apportioned. To hold otherwise would surely broaden the innocent owner defense beyond its intended scope and, thus, would be contrary to the judicial policy of narrow construction of affirmative defenses under CERCLA.

*IV.  Conclusion*

For the above-mentioned reasons, Defendants' motion for Summary Judgment is granted.