KATE H. ELLISON, Plaintiff v. GAMBILL OIL COMPANY, INC., J. GWYN GAMBILL, INCORPORATED, JIM GAMBILL, GUNVANTPURI B. GOSAI and B&B MINI MART, INC.; ARLIS TESTER d/b/a TESTERS GARAGE AND MUFFLER SHOP and/or TESTERS SHELL & MUFFLER SHOP, Defendants and J. GWYN GAMBILL, INC., Third Party Plaintiff; JEFF BARRETT, doing business as BARRETT PETROLEUM EQUIPMENT, Third Party Defendant and RUDRAM ENTERPRISES, INC., Intervenor

No. COA06-1016

(Filed 2 October 2007)

**1. Environmental Law— underground storage tanks—gas leak—strict liability—third-party exception**

The trial court erred by refusing to charge the jury on the third-party exception to the strict liability provisions of the North Carolina Oil Pollution and Hazardous Substances Control Act (OPHSCA) arising out of the contamination of plaintiff's well water with gasoline from the underground storage tanks located at defendant Mini Mart, and defendants are entitled to a new trial, because: (1) sufficient evidence was produced at trial to allow a reasonable inference from the jury that Barrett's actions were the cause of the discharge of gasoline; (2) a jury instruction as to Barrett's negligence did not correctly convey the exception; (3) there is no binding precedent showing a duty to affirmatively plead the exception, and while cases from other jurisdictions might be suggestive, they are not controlling; and (4) even if such affirmative pleading were required, the trial court granted a motion by Gosai and Mini Mart to amend its cross-claim to include Barrett, and copious evidence in the record existed that defendants several times mentioned Barrett as a third party whose acts or omissions might be considered to have intervened and thus relieved them of liability.

**2. Appeal and Error— preservation of issues—denial of writ of certiorari**

Although plaintiff contends under two cross-assignments of error that the trial court erred by granting a directed verdict for Gambill Oil Company, Inc. as well as a motion for directed verdict as to her claim of unfair and deceptive trade practices as to Gambill, Inc. and Jim Gambill, this issue is not addressed based on the Court of Appeals already denying plaintiff's petition for writ of certiorari to hear these arguments which were improperly preserved for appeal.

ELLISON v. GAMBILL OIL CO.

[186 N.C. App. 167 (2007)]

### 3. Appeal and Error— preservation of issues—new trial

Defendant's remaining assignments of error are not addressed because the case has already been reversed and remanded for a new trial.

Judge JACKSON concurring in part and dissenting in part.

Appeal by defendants from judgment entered 31 August 2005 and from an order entered 10 November 2005 by Judge Charles Lamm in Watauga County Superior Court. Heard in the Court of Appeals 21 March 2007.

*Sigmon, Clark, Mackie, Hutton, Hanvey & Ferrell, P.A., by Warren A. Hutton, Forrest A. Ferrell, and Nancy L. Huegerich, for plaintiff-appellee.*

*Vannoy & Reeves, PLLC, by Jimmy D. Reeves and M. Alexandra Reeves, for defendant-appellants J. Gwyn Gambill, Inc. and Jim Gambill; di Santi Watson Capua & Wilson, by Frank C. Wilson, III, for defendant-appellants Gunvantpuri B. Gosai and B&B Mini Mart, Inc.*

HUNTER, Judge.

Defendants Jim Gambill ("Gambill"), Gunvantpuri B. Gosai ("Gosai"), and B&B Mini Mart, Inc. ("Mini Mart") (collectively "defendants"), appeal from the trial court's denial of their motions for directed verdict, judgment notwithstanding the verdict, and new trial. These defendants, along with defendant J. Gwyn Gambill, Incorporated ("Gambill Inc."), appeal the trial court's instructions to the jury as to punitive damages and an exception to the strict liability statute. After careful review, we find that the trial court erred in failing to instruct the jury on the exception to strict liability, and remand for a new trial.

In January 2005, Kate H. Ellison ("plaintiff") discovered her well water had been contaminated with gasoline. That gasoline was later determined to have leaked from the underground storage tanks located at the Mini Mart. After the leak was discovered, defendants hired Jeff Barrett ("Barrett"), who had installed a new monitoring system, sumps, and lines at the Mini Mart in May 2001, to perform whatever repairs were necessary to stop the leak. Plaintiff brought suit and after a jury trial was awarded $500,000.00 from Gambill, Gambill Inc., Gosai, and the Mini Mart, including compensatory and punitive damages. Defendants appeal.

ELLISON v. GAMBILL OIL CO.

[186 N.C. App. 167 (2007)]

**[1]** Defendants argue that the trial court's refusal to charge the jury on the third-party exception to the strict liability provisions of the North Carolina Oil Pollution and Hazardous Substances Control Act ("OPHSCA") is an error requiring remand for new trial. We agree.

The only basis for liability submitted to the jury was strict liability under OPHSCA, which states: "Any person having control over oil or other hazardous substances which enters the waters of the State . . . shall be strictly liable, without regard to fault, for damages to persons or property, public or private, caused by such entry[.]" N.C. Gen. Stat. § 143-215.93 (2005). Per N.C. Gen. Stat. § 143-215.77(5) (2005), "having control over" includes "any person[] using, transferring, storing, or transporting oil or other hazardous substances immediately prior to a discharge of such oil . . . into the waters of the State, and specifically shall include carriers and bailees of such oil[.]" *Id.*

A third-party exception is given by N.C. Gen. Stat. § 143-215.83(b)(2)(d) (2005), which states:

> (b) Excepted Discharges.—This section shall not apply to discharges of oil or other hazardous substances in the following circumstances:
>
> . . .
>
> (2) When any person subject to liability under this Article proves that a discharge was caused by . . . :
>
> . . .
>
> (d) An act or omission of a third party, whether any such act or omission was or was not negligent.

*Id.*

When reviewing the refusal of a trial court to give certain instructions requested by a party to the jury, this Court must decide whether the evidence presented at trial was sufficient to support a reasonable inference by the jury of the elements of the claim. *Blum v. Worley*, 121 N.C. App. 166, 168, 465 S.E.2d 16, 18 (1995). If the instruction is supported by such evidence, the trial court's failure to give the instruction is reversible error. *Erie Ins. Exch. v. Bledsoe*, 141 N.C. App. 331, 335, 540 S.E.2d 57, 60 (2000). Thus, the appropriate inquiry here is whether evidence existed to support the request for an instruction on the third-party action exception. Because we believe such evidence did exist, we remand for a new trial.

Testimony as to the physical cause of the leak was given by several individuals. Per Barrett's testimony, when he came to make repairs in January 2005, he found that the filters on one dispenser "had pinholes in them and were spraying gas into the sump." Evidence presented at the trial tended to show that gasoline then leaked into the surrounding area when a clamp on that sump failed to maintain a seal around the boot, the entry point for hoses into the sump.

All relevant testimony at trial agreed that this failure of the clamp to maintain a seal led to the leakage. Randy Cavallier, a geologist with the environmental consulting firm Gambill called in to assess the contamination, testified that he saw the sump in question and his understanding of the cause of the leak was a "bad clamp." Gambill testified that Barrett made three attempts to fix the leak by applying sealant around the boot, but Barrett was only successful in getting the sump to again hold liquid without leaking when he repaired the "stripped screw and clamp." Glen Howell, the lead maintenance person for Gambill Inc., testified that "the clamp was stripped" and the boot itself was installed backwards. Barrett himself acknowledged that the clamp was stripped. Further, when Barrett was asked whether the only thing he needed to do to fix the leak was to put in a new boot and new clamp, he answered: "That is the only way the gasoline was getting out of the sump."

It seems clear from the record that sufficient evidence was produced at trial to allow a reasonable inference by the jury that Barrett's actions were the cause of the discharge of gasoline. As such, failure to instruct the jury on the third-party exception to the strict liability statute was error.

Plaintiff argues that, even if such evidence existed, any error in omitting an instruction on the exception was harmless because the verdict sheet contained the following question as to Barrett's negligence: "**Issue 11**: Was the third party plaintiff, J. Gwyn Gambill, Inc., damaged by the negligence of the third party defendant, Jeff Barrett d/b/a Barrett Petroleum?" However, as noted above, the statutory exception reads: "When any person subject to liability under this Article proves that a discharge was caused by . . . [a]n act or omission of a third party, *whether any such act or omission was or was not negligent.*" N.C. Gen. Stat. § 143-215.83(b)(2)(d) (emphasis supplied). An instruction to the jury as to Barrett's negligence does not correctly convey the exception, and as such was inadequate.

**ELLISON v. GAMBILL OIL CO.**

[186 N.C. App. 167 (2007)]

The dissent argues that, because Gosai and Mini Mart affirmatively pled the exception as to co-defendants Gambill and Gambill Inc. but not as to Barrett, Gosai and Mini Mart waived their right to ask for an instruction on the exception, regardless of whether the evidence warranted such an instruction.[1] However, this point is correct only if it is true that Gosai and Mini Mart were required to affirmatively plead the exception, and the dissent does not offer, nor do we find, any binding precedent showing a duty to affirmatively plead the exception. The only support for this statement that the dissent offers consists of cases from other jurisdictions wherein federal courts have made holdings under a federal statute, not our state courts making holdings under the OPHSCA. As such, while the cases might be suggestive were we to analogize their holdings to the statute at issue here, they are certainly not controlling. In this case, we choose not to follow them.

Further, even if such affirmative pleading were required, on 5 March 2004 the trial court granted a motion by Gosai and Mini Mart to amend its cross-claim to include Barrett. The amended cross-claim contained the following clauses:

16. Gambill and Barrett leaked, released, discharged or caused to be leaked, released, or discharged, without authorization or permit, hazard and toxic substances into or upon waters or land on or near the subject property.

17. Gambill and Barrett had control over the hazardous and toxic substances immediately prior to the leak, discharge and release into or upon waters or lands on or near the subject property.

18. Immediately after the leak, release, discharge, or immediately after becoming aware of the leak, release or discharge of hazardous and toxic substances into or upon waters or lands on or near subject property, Gambill and Barrett had the duty to undertake remedial actions to collect and remove the discharge and to remediate and restore the area affected by the discharge as nearly as may be to the condition existing prior to the discharge.

Again, in Gosai and Mini Mart's Requested Jury Charges submitted on 24 August 2005, they submitted the following: "Was the discharge of Gasoline . . . caused by an act or omission of a third party other than GB Gosai or B&B Minimart, Inc.[?]" The letter from their

---

1. It is worth noting that no party to this appeal argues or even suggests to this Court that any appellant has waived or failed to preserve for appeal the issue of failure to include the exception in jury instructions.

attorney containing this request goes on to expound on the request by noting that there exists an exception to the strict liability statute saying that strict liability "does not apply when any person subject to liability under this Article, such as [Gosai or Mini Mart,] proves that a discharge was caused by an act or omission of a third party, whether any such act or omission was or was not negligent." This, of course, is almost verbatim the exception in the statute, and at no point in the request are Gambill or Gambill Inc. mentioned as the third parties to whom the letter refers.

Again, in their motion for judgment notwithstanding the verdict or new trial filed on 8 September 2005, Gosai and Mini Mart state as partial grounds:

> 3. This Court erred in failing to charge the jury, as requested in writing by the Defendants B & B Mini Mart, Inc. and Gosai, that there was an exception to the Strict Liability provisions of the North Carolina Oil Pollution and Hazardous Substances Control Act set forth in N.C.G.S. § 143-215.83(2)(d). This Court should have instructed the jury that if B & B Mini Mart, Inc. and Gosai proved that the discharge of a hazardous substance was caused by an act or omission of a third party, strict liability would not apply. This was a correct statement of the law, presented to this Court in writing and was warranted under the facts presented to the jury.

Thus, copious evidence exists in the record that defendants Gosai and Mini Mart several times mentioned Barrett as a third party whose acts or omissions might be considered to have intervened and thus relieved them of liability. As such, we believe that, even were such a claim required to be affirmatively pled, defendants Gosai and Mini Mart have met that burden.

[2] Finally, we note that in her brief plaintiff argued, pursuant to two cross-assignments of error, that the trial court erred in granting a directed verdict for Gambill Oil Company, Inc. as well as the motion for directed verdict as to her claim of unfair and deceptive trade practices as to Gambill Inc. and Jim Gambill. Having already denied her petition for a writ of certiorari to hear these arguments, which were improperly preserved for appeal, we do not address them here.

[3] Because we reverse and remand for new trial on this assignment of error, we do not address defendant's remaining assignments. *See, e.g., Lonon v. Talbert,* 103 N.C. App. 686, 697, 407 S.E.2d 276, 283 (1991).

**ELLISON v. GAMBILL OIL CO.**

[186 N.C. App. 167 (2007)]

Reversed and remanded.

Judge TYSON concurs.

Judge JACKSON concurs in part and dissents in part in a separate opinion.

JACKSON, Judge concurring in part and dissenting in part.

I concur with the majority opinion that plaintiff's cross-assignments of error are not preserved for appellate review, and I further agree that the evidence in the instant case would support defendants' requested instruction on the third-party exception to strict liability under the North Carolina Oil Pollution and Hazardous Substances Control Act ("OPHSCA"), North Carolina General Statutes, sections 143-215.75 et seq. However, I believe that certain defendants—specifically, Gosai and the Mini Mart—waived the right to such an instruction by not affirmatively pleading and properly arguing the third-party exception, and accordingly, I dissent on this issue with respect to those particular defendants.

The OPHSCA provides an exception from strict liability for a hazardous substance discharge when the discharge is caused by "[a]n act or omission of a third party, whether any such act or omission was or was not negligent." N.C. Gen. Stat. § 143-215.83(b)(2)(d) (2001). This third-party exception, which defendants have the burden of proving, see N.C. Gen. Stat. § 143-215.83(b)(2) (2001), is in the nature of an affirmative defense. See generally Estate of Smith v. Underwood, 127 N.C. App. 1, 9, 487 S.E.2d 807, 813 (distinguishing between a rebuttal defense and an affirmative defense), disc. rev. denied, 347 N.C. 398, 494 S.E.2d 410 (1997). Construing section 143-215.83(b)(2)(d) as an affirmative defense is consistent with the interpretation of comparable statutes. See, e.g., Elementis Chems., Inc. v. T.H. Agric. & Nutrition, L.L.C., 373 F. Supp. 2d 257, 264 (S.D.N.Y. 2005) (describing the exceptions to strict liability imposed by the federal Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. § 9607—exceptions that are substantively similar to those in section 143-215.83(b)(2)—as affirmative defenses), superseded in part on other grounds by Consol. Edison Co. of N.Y., Inc., v. UGI Utils., Inc., 423 F.3d 90 (2d Cir. 2005); Grand St. Artists v. Gen. Elec. Co., 28 F. Supp. 2d 291, 295-96 (D.N.J. 1998) (same); United States v. Stringfellow, 661 F. Supp. 1053, 1062 (C.D. Cal. 1987) (same); see also City of Brentwood v. Cent. Valley Reg'l Water Quality Control Bd.,

ELLISON v. GAMBILL OIL CO.

[186 N.C. App. 167 (2007)]

20 Cal. Rptr. 3d 322, 329-30 (Cal. Ct. App. 2004) (holding that exceptions—such as the act or omission of a third party—to strict liability under section 13385 of California's Water Code are affirmative defenses).[2] Furthermore, it is well-established that failure to plead an affirmative defense constitutes a waiver of the defense. *See* N.C. Gen. Stat. § 1A-1, Rule 8(c) (2001); *see also Purchase Nursery, Inc. v. Edgerton,* 153 N.C. App. 156, 162, 568 S.E.2d 904, 908 (2002) (" 'Failure to raise an affirmative defense in the pleadings generally results in a waiver thereof.' " (quoting *Robinson v. Powell,* 348 N.C. 562, 566, 500 S.E.2d 714, 717 (1998)); *Underwood,* 127 N.C. App. at 9, 487 S.E.2d at 813 (noting that an affirmative defense needs to be specifically pled in the answer). Accordingly, defendants had the burden of pleading the third-party exception to strict liability under the OPHSCA.

On appeal, defendants contend that "the third party exception to the N.C. Oil Pollution and Hazardous Substances Control Act exempts *each Defendant-Appellant* from liability." (Emphasis added). Defendants base their contention solely upon the acts or omissions of Barrett, whom Gambill Inc. hired to perform upgrades to the Mini Mart site, and argue that "[s]ufficient evidence was presented that action by a third party, *Barrett,* caused, or at a minimum, contributed to the subject discharge." (Emphasis added).

With respect to the various defendants, Gambill and Gambill Inc. raised the issue of the third-party exception to strict liability in their answer. Specifically, Gambill and Gambill Inc. stated that "the truth is averred to be that the answering defendants are not strictly liable to the plaintiffs based on the *acts or omissions of the third party defendant, Jeff Barrett,* doing business as Barrett Petroleum Equipment." (Emphasis added). Additionally, at trial and prior to the jury instructions, the attorney for Gambill and Gambill Inc. requested that the trial court include an instruction on the third-party exception to strict liability. Therefore, Gambill and Gambill Inc. preserved their

2. Although the majority takes issue with the citation to these cases and the failure to "offer any binding precedent," citation to persuasive authority often is necessary in a case of first impression, such as the instant case. In fact, this approach has been utilized previously by this Court. *See, e.g., Skinner v. Preferred Credit,* 172 N.C. App. 407, 413, 616 S.E.2d 676, 680 (2005) ("Because this case presents an issue of first impression in our courts, we look to other jurisdictions to review persuasive authority that coincides with North Carolina's law."), *aff'd,* 361 N.C. 114, 638 S.E.2d 203 (2006); *Holroyd v. Montgomery County,* 167 N.C. App. 539, 544, 606 S.E.2d 353, 357 (2004) ("[A]lthough not controlling authority, decisions of our sister jurisdictions provide guidance on this question of first impression."), *disc. rev. denied,* 359 N.C. 631, 613 S.E.2d 690 (2005).

ELLISON v. GAMBILL OIL CO.

[186 N.C. App. 167 (2007)]

right to an instruction on the third-party exception, and accordingly, the majority correctly concludes that Gambill and Gambill Inc. are entitled to a new trial on the basis of the trial court's failure to instruct the jury on the third-party exception to strict liability under the OPHSCA.

Gosai and the Mini Mart also affirmatively pled the third-party exception:

> Gosai affirmatively avers that Co-Defendants Gambill Oil Company, Inc., J. Gwyn Gambill, Incorporated, and Jim Gambill were solely and exclusively in control of and responsible for the USTs and UST systems located on the premises of B&B Mini Mart, Inc. *The release and/or discharge of any petroleum products* which resulted in contamination of the soils, subsoils, surface waters and ground waters within and without the property surrounding, and on which B&B Mini Mart is located *was as a* sole, direct and proximate *result of the* negligent *conduct of Gambill Oil Company, Inc., J. Gwyn Gambill, Incorporated, and Jim Gambill.*

(Emphases added). Gosai and the Mini Mart, however, have not argued on appeal that they were entitled to an instruction on the third-party exception based upon acts or omissions of "Gambill Oil Company, Inc., J. Gwyn Gambill, Incorporated, and Jim Gambill." Accordingly, this issue has not been preserved for appellate review. *See* N.C. R. App. P. 28(b)(6) (2006).

Instead, Gosai and the Mini Mart contend that they were entitled to the instruction on the third-party exception based upon *Barrett's* acts or omissions. Gosai and the Mini Mart, however, waived their right to such instruction. Specifically, the allegation against Gambill Inc. in their answer is insufficient to encompass Barrett's acts or omissions, since it is undisputed that Barrett acted as an independent contractor, not as Gambill Inc.'s agent. Although "the general agency doctrine . . . holds the principal responsible for the acts of his agent," *Hodge v. First Atlantic Corp.*, 6 N.C. App. 353, 356, 169 S.E.2d 917, 919 (1969), it is well-established that "torts committed by an independent contractor are not imputed to the employer." *Estate of Redding v. Welborn*, 170 N.C. App. 324, 330, 612 S.E.2d 664, 668 (2005). In fact, the attorney for Gosai and the Mini Mart acknowledged at trial that he only pled the third-party exception with respect to Gambill and Gambill Inc.:

> COURT: And you did not—did you allege an exception under the exception on affirmative defense in your answer or any other pleadings against Barrett?

> [ATTORNEY FOR GOSAI AND THE MINI MART]: No, but against J. Gwyn Gambill, Inc. I did.

The majority notes, however, that the attorney for Gosai and the Mini Mart (1) filed an amended cross-claim against Barrett; (2) submitted a letter requesting a jury instruction that the discharge of gasoline was caused by the act or omission of a third party, without referencing any specific actor; and (3) made a motion for judgment notwithstanding the verdict on the grounds that the trial court erred in failed to instruct on the third-party exception, again without referencing any specific actor.

First, the contents of the letter concerning jury instructions and the motion for judgment notwithstanding the verdict are immaterial as to whether Gosai and the Mini Mart affirmatively pled the third-party exception. With respect to the cross-claim, although Gosai and the Mini Mart alleged facts sufficient for a finding that Barrett should be subject to strict liability, there is no allegation in the cross-claim that Gosai and the Mini Mart are exempted from strict liability because of Barrett's acts or omissions. The cross-claim does not seek to avoid liability for Gosai and the Mini Mart, but instead seeks to impose liability on Barrett. Further, even if the cross-claim included such an allegation, the trial court would have been required to "treat the pleading as if there had been a proper designation" of the affirmative defense only if justice required. N.C. Gen. Stat. § 1A-1, Rule 8(c) (2001). Finally, it must be noted that although Gosai and the Mini Mart amended their cross-claim, they made no attempt until the discussion on proposed jury instructions to amend their answer and the affirmative defense as originally pled, notwithstanding their statutory right to amend their pleadings. See N.C. Gen. Stat. § 1A-1, Rule 15(a) (2001). Although the attorney for Gosai and the Mini Mart made an oral motion to amend their answer during the conference on jury instructions, the trial court denied the motion, and it is well-settled that the "[d]enial of a motion to amend pleadings is a matter soundly within the discretion of the trial court." Stetser v. TAP Pharm. Prods. Inc., 165 N.C. App. 1, 30, 598 S.E.2d 570, 589 (2004).

Ultimately, although counsel for Gosai and the Mini Mart argued to the trial court late in the trial proceedings—and again to this Court on appeal—that the trial court was required to instruct the jury on the

**ELLISON v. GAMBILL OIL CO.**

[186 N.C. App. 167 (2007)]

third-party exception with respect to Barrett's acts or omissions, Gosai and the Mini Mart failed to affirmatively plead the exception with respect to Barrett and, therefore, waived the defense. Accordingly, both Gosai and the Mini Mart were not entitled to such an instruction, regardless of whether—as the majority opinion holds—the evidence would have supported such an instruction.

With respect to defendants' remaining arguments,[3] defendants first contend that the trial court erred in denying their motions for directed verdict, judgment notwithstanding the verdict, and new trial, through which defendants argued that plaintiff failed to present sufficient evidence for the trial court to submit to the jury plaintiff's claims of strict liability under the OPHSCA. I disagree.

This Court's review of a trial court's ruling on a motion for directed verdict is *de novo. See Maxwell v. Michael P. Doyle, Inc.*, 164 N.C. App. 319, 323, 595 S.E.2d 759, 762 (2004). "Where the trial court finds there is more than a scintilla of evidence supporting each element of the plaintiff's claim, the motion for directed verdict should be denied." *Ward v. Beaton*, 141 N.C. App. 44, 47, 539 S.E.2d 30, 33 (2000), *appeal dismissed and cert. denied*, 353 N.C. 398, 547 S.E.2d 431 (2001). "A motion for a judgment notwithstanding the verdict is essentially the renewal of the directed verdict motion, and the standards are the same." *Bryant v. Thalhimer Bros., Inc.*, 113 N.C. App. 1, 6, 437 S.E.2d 519, 522 (1993), *appeal dismissed and disc. rev. denied*, 336 N.C. 71, 445 S.E.2d 29 (1994). The standard of review with respect to the trial court's denial of defendants' motion for new trial is abuse of discretion. *See In re Will of Buck*, 350 N.C. 621, 624, 516 S.E.2d 858, 860 (1999). Defendants, however, failed to present any argument in their brief with respect to their motion for new trial and the corresponding standard of review. Accordingly, this argument should be deemed abandoned. *See* N.C. R. App. P. 28(b)(6) (2006).

In the case *sub judice*, the only basis for liability submitted to the jury was strict liability under the OPHSCA, pursuant to which "[a]ny person having control over oil or other hazardous substances which enters the waters of the State in violation of this Part shall be strictly liable, without regard to fault, for damages to persons or property, public or private, caused by such entry, subject to the exceptions enumerated in [section] 143-215.83(b)." N.C. Gen. Stat. § 143-215.93 (2001).

---

3. As the majority correctly concludes, Gambill and Gambill Inc. are entitled to a new trial; this dissenting opinion addresses defendants' remaining arguments only insofar as they concern Gosai and the Mini Mart.

ELLISON v. GAMBILL OIL CO.

[186 N.C. App. 167 (2007)]

"Having control over oil or other hazardous substances" shall mean, but shall not be limited to, any person, using, transferring, storing, or transporting oil or other hazardous substances immediately prior to a discharge of such oil or other hazardous substances onto the land or into the waters of the State, and specifically shall include carriers and bailees of such oil or other hazardous substances.

N.C. Gen. Stat. § 143-215.77(5) (2001). The definition of "oil" includes gasoline, see N.C. Gen. Stat. § 143-215.77(8) (2001), and " '[w]aters' is broadly defined under [section] 143-215.77(18) as: 'any stream, river . . . or any other body or accumulation of water, surface or underground, public or private, natural or artificial, which is contained within, flows through, or borders upon this State . . . .' " *Jordan v. Foust Oil Co., Inc.*, 116 N.C. App. 155, 160, 447 S.E.2d 491, 494 (1994) (alterations in original) (quoting N.C. Gen. Stat. § 143-215.77(18)), *disc. rev. denied*, 339 N.C. 613, 454 S.E.2d 252 (1995). *Jordan* specifically construed well water to fall within the purview of section 143-215.93. *See id.*

Defendants argue that Gosai and the Mini Mart are not subject to strict liability because plaintiff failed to present sufficient evidence that Gosai and the Mini Mart were "person[s] having control" of the hazardous substance pursuant to section 143-215.93. I disagree.

The OPHSCA subjects to strict liability those having control over hazardous substances immediately prior to a discharge, and persons "[h]aving control" include, but are "not . . . limited to, any person, using, transferring, storing, or transporting oil . . . immediately prior to a discharge of such oil." N.C. Gen. Stat. § 143-215.77(5) (2001). The statute expressly excludes

any person supplying or delivering oil into a petroleum underground storage tank that is not owned or operated by the person, unless:

a. The person knows or has reason to know that a discharge is occurring from the petroleum underground storage tank at the time of supply or delivery;

b. The person's negligence is a proximate cause of the discharge; or

c. The person supplies or delivers oil at a facility that requires an operating permit under [section] 143-215.94U and

a currently valid operating permit certificate is not held or
displayed at the time of the supply or delivery.

*Id.*

In the instant case, the evidence demonstrates that (1) Gosai is
the president of B&B Mini Mart, Inc., is the owner of the Mini Mart,
and conducts the Mini Mart's day-to-day operations; and (2) the Mini
Mart purchases gasoline from Gambill Inc., stores the gasoline in
underground storage tanks, and sells the gasoline through its pumps.
Further, the evidence shows that (1) Gosai worked with Gambill in
upgrading the equipment at the Mini Mart; (2) Gosai contacted
Gambill Inc. whenever the Mini Mart required additional deliveries of
gasoline; (3) Mini Mart employees informed Gosai of the discrepan-
cies in the gasoline records; (4) Gosai informed Gambill that the gas
was "coming up short"; and (5) Maxie Jones, a Mini Mart employee,
informed Gosai every time that the line leak alarm went off and the
system needed to be reset. Although defendants emphasize that nei-
ther Gosai nor the Mini Mart owned either the underground storage
tanks or the tract of land on which the Mini Mart was located, this
Court has clarified that an ownership interest is not dispositive of
"control." *See Foust Oil Co.*, 116 N.C. App. at 161-62, 447 S.E.2d at
495. Further, neither Gosai nor the Mini Mart are exempted from the
definition of persons "[h]aving control" over hazardous substances on
the grounds that they do not own the underground storage tanks,
because even if they could be considered to be "person[s] supplying
or delivering oil," the evidence demonstrated that both Gosai and the
Mini Mart knew or had reason to know of the discharge from the
underground tanks. N.C. Gen. Stat. § 143-215.77(5)(a) (2001).

As this Court noted in *Foust*, the legislature intended the
OPHSCA to have a "broad reach" and " 'having control over oil or
other substances' is . . . broadly defined." *Foust Oil Co.*, 116 N.C.
App. at 165, 447 S.E.2d at 497. Here, the evidence demonstrates that
Gosai and the Mini Mart had control over the gasoline at issue, and
therefore, Gosai and the Mini Mart properly are subject to strict lia-
bility under the OPHSCA.

Defendants, nevertheless, contend that even if the evidence sup-
ports a determination of strict liability, the third-party exception to
strict liability prevents them from being held liable and that the trial
court, therefore, erred in denying their motions. However, as dis-
cussed *supra*, Gosai and the Mini Mart failed to preserve their argu-

**ELLISON v. GAMBILL OIL CO.**

[186 N.C. App. 167 (2007)]

ment with respect to an instruction on the third-party exception. Accordingly, I would overrule defendants' argument.

In their final argument, defendants contend that the trial court erred by instructing the jury on punitive damages. I disagree.

"It is the duty of the trial court to instruct the jury on the law with regard to every substantial feature of the case." *Anderson v. Austin*, 115 N.C. App. 134, 136, 443 S.E.2d 737, 739, *disc. rev. denied*, 338 N.C. 514, 452 S.E.2d 806 (1994). Punitive damages, which may be appropriate "to punish a defendant for egregiously wrongful acts and to deter the defendant and others from committing similar wrongful acts," N.C. Gen. Stat. § 1D-1 (2001), "may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded: (1) [f]raud[;] (2) [m]alice[;] [or] (3) [w]illful or wanton conduct." N.C. Gen. Stat. § 1D-15(a) (2001). "Willful or wanton conduct" is defined as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm. 'Willful or wanton conduct' means more than gross negligence.' " N.C. Gen. Stat. § 1D-5(7) (2001). If the defendant is a corporate entity, the party seeking punitive damages must prove that "the officers, directors, or managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages." N.C. Gen. Stat. § 1D-15(c) (2001).

"[P]unitive damages may . . . be awarded only if a plaintiff can prove willful or wanton conduct (or fraud or malice) by clear and convincing evidence." *McNeill v. Holloway*, 141 N.C. App. 109, 114, 539 S.E.2d 309, 312 (2000). In reviewing a trial court's decision to give or not give a jury instruction, this Court must determine "whether, in the light most favorable to the proponent, the evidence presented [wa]s sufficient to support a reasonable inference of the elements of the claim asserted." *Blum v. Worley*, 121 N.C. App. 166, 168, 465 S.E.2d 16, 18 (1995); *accord Yancey v. Lea*, 354 N.C. 48, 52, 550 S.E.2d 155, 157 (2001). Specifically, "when 'more than a *scintilla* of evidence exist[s] from which the jury could find that defendant's [tortious conduct] was accompanied by a reckless disregard for [plaintiff's] rights,' a punitive damages charge is warranted." *Blum*, 121 N.C. App. at 169, 465 S.E.2d at 18 (emphasis added) (first alteration in original) (quoting *Lee v. Bir*, 116 N.C. App. 584, 589, 449 S.E.2d 34, 36 (1994), *cert. denied*, 340 N.C. 113, 454 S.E.2d 652 (1995)).

ELLISON v. GAMBILL OIL CO.

[186 N.C. App. 167 (2007)]

In the instant case, defendants contend that plaintiff failed to present any, much less sufficient, evidence to support an instruction on punitive damages against the Mini Mart. Defendants contend that the evidence showed that the Mini Mart (1) "obeyed orders from . . . government officials"; (2) "followed all State guidelines and regulations"; and (3) "was never asked . . . to participate in any remedial measures at the site."

Plaintiff, however, contends that the evidence demonstrated that the Mini Mart had both actual and constructive knowledge of the gasoline leaks but "ignored or concealed this knowledge and continued to pump gasoline" to the point that plaintiff's water was so contaminated that she was instructed not to use her water for any purpose. Plaintiff's contention is supported by the evidence discussed *supra,* and it is well-settled that "[t]he weight of the evidence [i]s for the jury." *Parnell v. Wilson,* 252 N.C. 486, 487, 114 S.E.2d 114, 115 (1960) (per curiam). Plaintiff presented sufficient evidence—certainly more than the required scintilla—to support a reasonable inference of each of the necessary elements for an award of punitive damages against the Mini Mart. Accordingly, the trial court properly instructed on punitive damages with respect to the Mini Mart.

Defendants also assign error to the following emphasized portion of the trial court's instructions concerning punitive damages:

If you decide, in your discretion, to award punitive damages, any amount you award must bear a rational relationship to the sum reasonably needed to punish a defendant for egregiously wrongful acts and to deter the defendant and others from committing similar wrongful acts. In making this determination, you may consider only that evidence which relates to[:] the reprehensibility of the defendant[s'] conduct; the likelihood, at the relevant time, of serious harm to the plaintiff or others similarly situated; the degree of the defendant[s'] awareness of the probable consequences of [their] conduct; the duration of the defendant[s'] conduct; the actual damages suffered by the plaintiff; *any concealment by the defendant[s] of the facts or consequences of [their] conduct; whether the defendant[s] profited by the conduct;* [and] the defendant[s'] ability to pay punitive damages, as evidenced by [their] revenues or net worth.

(Emphasis added). The trial court's instruction was based upon North Carolina General Statutes, section 1D-35(2). On appeal, de-

fendant contends that there was not sufficient evidence to support the factors related to concealment and profit. *See* N.C. Gen. Stat. § 1D-35(2)(f), (h) (2001).

It is incumbent upon defendants to show prejudice as a result of the trial court's including these factors in its instruction. *See Word v. Jones ex rel. Moore*, 350 N.C. 557, 565, 516 S.E.2d 144, 148 (1999). As explained by our Supreme Court, "Rule 61 of the North Carolina Rules of Civil Procedure provides that erroneous jury instructions are not grounds for granting a new trial unless the error affected a substantial right. In other words it must be shown that a different result would have likely ensued had the error not occurred." *Id.* (internal quotation marks and citations omitted). However, in their brief, defendants have failed to explain how they were prejudiced by the inclusion of the factors listed in subsections (f) and (h) and have failed to demonstrate that a different result likely would have been reached at trial. Accordingly, this assignment of error should be overruled.

Based upon the foregoing, I would hold that the trial court properly (1) refused to instruct the jury on the third-party exception to strict liability with respect to Gosai and the Mini Mart; (2) denied defendants' motions for directed verdict and judgment notwithstanding the verdict with respect to Gosai and the Mini Mart; and (3) instructed the jury on punitive damages with respect to the Mini Mart. Accordingly, I would affirm in part and reverse in part.