MINNA SUSAN GOLDBERG TALIAN, ADMINISTRATRIX OF THE ESTATE OF SHERRI LYNN GOLDBERG, AND DANA KING, PLAINTIFFS v. THE CITY OF CHARLOTTE, A MUNICIPAL CORPORATION, DEFENDANT

No. 8926SC145

(Filed 1 May 1990)

**Highways and Cartways § 7 (NCI3d) — collision at intersection — failure of city to install left turn light — directed verdict for city proper**

The trial court properly granted directed verdict for the city in a wrongful death action arising from a motorcycle-truck accident where plaintiff contended that the city was negligent in failing to install a protected left turn signal at the intersection pursuant to a duty to install such a device according to national uniform traffic control and highway safety stand-

ards. The federal statutes and regulations cited by plaintiffs in no way create or impose a national standard which cities must follow with respect to installation of protected left turn signals, there are no mandates or warrants contained in the Manual on Uniform Traffic Control Devices regarding left turn signalization, the traffic control devices handbook is in permissive rather than mandatory terms, North Carolina case law has consistently held that installation, maintenance and timing of traffic control signals at intersections are discretionary government functions, there is no mandate regarding left turn signalization in the Charlotte Charter and Code, and, since the traffic signals existing at the intersection at the time of the accident were in proper working order and complied in every way with all requirements of the Manual on Uniform Traffic Control Devices, defendant was also in compliance with the Charlotte Code and the North Carolina Department of Transportation's Signal Manual and supplement to the MUTCD. Although the accident occurred on 26 June 1984 and the city had made the decision in December of 1982 to install a left turn signal, the city had been required by law to reinitiate the bidding process after only one bid was received and plaintiffs offered no evidence other than the delay from which the jury could infer that the delay was unreasonable. Mere delay in meeting a recognized need does not, without more, establish that the delay was unreasonable or that the municipality abused its discretion.

**Am Jur 2d, Highways, Streets, and Bridges §§ 407, 491, 599.**

Judge PHILLIPS dissenting.

APPEAL by plaintiffs from judgment entered 29 September 1988 by *Judge Charles C. Lamm, Jr.* in MECKLENBURG County Superior Court. Heard in the Court of Appeals 14 September 1989.

*Levine and Levine, by Miles S. Levine, for plaintiff-appellant Minna Susan Goldberg Talian (Administratrix of the Estate of Sherri Lynn Goldberg).*

*Ronald Williams for plaintiff-appellant Dana Scott King.*

*Golding, Meekins, Holden, Cosper & Stiles, by Emily S. Reeve and Fred C. Meekins, for defendant-appellee.*

TALIAN v. CITY OF CHARLOTTE

[98 N.C. App. 281 (1990)]

PARKER, Judge.

Plaintiffs Minna Susan Goldberg Talian, Administratrix of the Estate of Sherri Lynn Goldberg, and Dana King instituted this wrongful death and personal injury action against the City of Charlotte to recover damages arising out of a motorcycle-truck accident which occurred at the intersection of North Sharon Amity Road and Central Avenue within the city of Charlotte, North Carolina (herein "the City"). Plaintiffs contend that the City was negligent in failing to install a protected left turn signal at the intersection and that this omission on the part of the City proximately caused the death of Talian's intestate and personal injuries to King. Plaintiffs appeal from the trial court's entry of a directed verdict in favor of defendant.

On a motion for a directed verdict under Rule 50(a) of the N.C. Rules of Civil Procedure, the Court must determine "[w]hether the evidence, taken in the light most favorable to plaintiff, was sufficient for submission to the jury." *Helvy v. Sweat*, 58 N.C. App. 197, 199, 292 S.E.2d 733, 734 (1982), *disc. rev. denied*, 306 N.C. 741, 295 S.E.2d 477 (1982) (citing *Hunt v. Montgomery Ward and Co.*, 49 N.C. App. 642, 644, 272 S.E.2d 357, 359 (1980)).

In order to prove that defendant was negligent, plaintiff must show:

(1) defendant failed to exercise proper care in the performance of a duty owed to plaintiff;

(2) the negligent breach of that duty was a proximate cause of plaintiff's injury; and

(3) a person of ordinary prudence should have foreseen that plaintiff's injury was probable under the circumstances as they existed.

*Jordan v. Jones*, 314 N.C. 106, 108, 331 S.E.2d 662, 663 (1985). If plaintiff fails to present evidence as to any one of these elements, directed verdict is proper. *Cooper v. Town of Southern Pines*, 58 N.C. App. 170, 173, 293 S.E.2d 235, 236 (1982).

On 26 June 1984 plaintiff King and Goldberg, riding King's motorcycle, were traveling north on North Sharon Amity Road about 9:40 p.m. At the same time, Jacqueline Rogers was traveling south on North Sharon Amity Road and was in the left turn lane preparing to turn east onto Central Avenue at its intersection

with North Sharon Amity. As King's motorcycle approached the intersection at forty miles per hour, in a forty-five mile per hour zone, King saw Rogers' pickup truck with the left turn signal blinking but assumed that Rogers was going to yield the right-of-way to him. Rogers, however, turned just as plaintiff King crossed through the intersection, and the motorcycle hit the right front fender of the truck. Goldberg was killed instantly and King received serious injuries.

At the time of the collision, the southbound traffic at the intersection of North Sharon Amity Road and Central Avenue was controlled by a standard three-light traffic control signal which was properly operating. The other three approaches to the intersection were protected by traffic control devices having protected left turn signals. On 31 July 1984 defendant installed a protected left turn signal at the southbound intersection.

The determinative legal question in this appeal is whether the city had a duty to install a traffic control device having a protected left turn signal. Plaintiffs contend that such a duty exists because various statutes, codes and manuals pertaining to traffic control and highway safety create national uniform standards. Plaintiffs cite 23 U.S.C. § 402(a) under the Highway Safety Act, which provides that "[e]ach State shall have a highway safety program approved by the Secretary, designed to reduce traffic accidents and deaths, injuries, and property damage resulting therefrom. Such programs shall be in accordance with uniform standards promulgated by the Secretary." 23 U.S.C. § 402(a) (1982).

Additionally, 23 C.F.R. § 1204.4 provides that:

> Each State, in cooperation with its political subdivisions, and each Federal department or agency which controls highways open to public travel or supervises traffic operations, shall have a program for applying traffic engineering measures and techniques, including the use of traffic control devices, to reduce the number and severity of traffic accidents.

23 C.F.R. § 1204.4 (1984). 23 U.S.C. § 402(e) further states that the "[u]niform standards promulgated by the Secretary to carry out this section shall be developed in cooperation with the States, their political subdivisions, appropriate Federal departments and agencies, and such other public and private organizations as the Secretary deems appropriate." 23 U.S.C. § 402(e) (1982).

TALIAN v. CITY OF CHARLOTTE

[98 N.C. App. 281 (1990)]

Plaintiffs contend that the City was under an obligation to install a protected left turn signal at the intersection by virtue of these statutes and two manuals published by the Federal Highway Administration, namely, the Manual on Uniform Traffic Control Devices (herein "MUTCD") and the Traffic Control Devices Handbook (herein "TCDH"). To form the connective State link, plaintiff cites Title 19A of the North Carolina Administrative Code, which reads as follows:

### Uniform Traffic Control Devices

(a) The United States Department of Transportation publishes a volume entitled "Manual on Uniform Traffic Control Devices." This publication has been adopted by the Federal Highway Administrator as a national standard that is applicable to all classes of highways. This volume contains standards for the design and deployment of traffic control devices. The 1978 edition is hereby adopted and incorporated by reference. Revision 1 dated 1979, Revision 2 dated 1983 and Revision 3 dated 1984 of the 1978 edition of the Manual on Uniform Traffic [Control] Devices for Streets and Highways (MUTCD) published by the Federal Highway Administrator are hereby adopted and incorporated by reference.

N.C. Admin. Code tit. 19A, r. 02.0208 (Jan. 1986). The federal statutes cited by plaintiffs do not, however, direct the City to follow any uniform guidelines for left turn signalization. For example, 23 U.S.C. § 402(a) only directs states to have a state highway safety program which is in accordance with uniform guidelines promulgated by the Secretary. These regulations in no way create or impose a national standard which cities must follow with respect to installation of protected left turn signals.

The MUTCD does require full signalization of an intersection when five or more accidents involving personal injury or property damage of one hundred dollars or more have occurred within a twelve month period. The undisputed evidence offered at trial showed, however, that the traffic signal devices in place and properly operating at the time of the accident complied in every way with all requirements of the MUTCD. Although plaintiffs' expert witness testified that in his opinion defendant failed to exercise good engineering judgment, principles and practices when it failed to install a protected left turn signal, the record shows, and plain-

tiffs' expert admitted, that there are no mandates or warrants contained in the MUTCD regarding left turn signalization.

The TCDH does contain guidelines for the installation of left turn signals. The first full paragraph of the introduction to the TCDH expressly states:

> This Traffic Control Devices Handbook is primarily intended to augment [the MUTCD] by serving an interpretative function and by linking the MUTCD standards and warrants with the activities related to complying with these national uniform standards. As such, the Handbook does not establish Federal Highway Administration (FHWA) policies or standards. Nor does it attempt to detail basic engineering and design techniques. . . . The Handbook offers guidelines for implementing the standards and applications contained in the Manual.

Traffic Control Devices Handbook 1-1 (1983). All information regarding left turn signalization is located in the 1983 Edition of the TCDH under a section labeled "Left-Turn Phase Criteria." In this section, the TCDH expressly states: "These warrants are not mandated by the MUTCD and are provided here for informational purposes only." TCDH 4-18 (1983). Thereafter, under a section expressly labeled "Suggested Guidelines," the TCDH states, "The following guidelines may be used when considering the addition of separate left-turn phasing." Following this preface, the TCDH recommends installing left turn phasing if the critical number of accidents has occurred at an intersection. The critical numbers for one approach are four left turn accidents in one year, or six in two years. TCDH 4-19 (1983).

Plaintiffs' attempt to establish a duty based on these statutes and manuals fails for two reasons. First, the plain language of the 1983 TCDH, the only manual mentioning left turn signalization, is in permissive, not mandatory terms. Secondly, under the North Carolina General Statutes, municipalities are required to conform to the traffic control device standards promulgated in the MUTCD only with respect to state highways. G.S. 20-169. Neither Central Avenue nor North Sharon Amity Road is part of the state highway system.

North Carolina case law has consistently held that installation, maintenance and timing of traffic control signals at intersections are discretionary governmental functions. *See Hamilton v. Hamlet,*

TALIAN v. CITY OF CHARLOTTE

[98 N.C. App. 281 (1990)]

238 N.C. 741, 78 S.E.2d 770 (1953); *Hodges v. Charlotte*, 214 N.C. 737, 200 S.E. 889 (1939); and *Rappe v. Carr*, 4 N.C. App. 497, 167 S.E.2d 48 (1969). As this Court stated in *Cooper v. Town of Southern Pines*, 58 N.C. App. 170, 293 S.E.2d 235 (1982):

> The fact that a city has the *authority* to make certain decisions, however does not mean that the city is under an *obligation* to do so. The words "authority" and "power" are not synonymous with the word "duty." . . . There is no mandate of action. Courts will not interfere with discretionary powers conferred on a municipality for the public welfare unless the exercise (or non-exercise) of those powers is so clearly unreasonable as to constitute an abuse of discretion.

58 N.C. App. at 173, 293 S.E.2d at 236 (emphasis in original) (citing *Riddle v. Ledbetter*, 216 N.C. 491, 493-94, 5 S.E.2d 542, 544 (1939) ). General Statute 160A-300, alleged in plaintiffs' complaint, but not argued in their brief to this Court, grants cities discretionary authority but imposes no affirmative duty on them to control vehicular traffic on the public streets of the city.

Plaintiffs also argue that the Charlotte Charter and Code create a duty for the City to install protected left turn signalization. Section 6.21(a) of the Charlotte Charter states:

> The City Council, upon finding as a fact that the density of population and volume of vehicular and pedestrian traffic in the City of Charlotte requires prompt, continuing, and effective control of such traffic through the installation, removal, relocation and change of official traffic-control devices in order to protect and promote the public safety and convenience, may designate, by ordinance, an official of the city to make or cause to be made, upon the basis of engineering and traffic investigations, installations, removals, relocations and changes of official traffic control devices in accordance with accepted traffic engineering principals and standards and in accordance with the procedures hereinafter set forth.

Charlotte, NC, Charter § 6.21(a) (1965). This section, however, merely grants to the City Council power to designate an official of the City to make installations, relocations, removals and changes of official traffic control devices. There is no mandate regarding left turn signalization.

Plaintiff also cites Charlotte Code § 14-57(d) which states:

All traffic-control devices shall conform to the manual and specifications approved by the state board of transportation or resolution adopted by the city council. All traffic-control devices so erected and not inconsistent with the provisions of State law or this chapter shall be official traffic-control devices.

Charlotte, NC, Code § 14-57(d) (1961). The term "official traffic-control device" as used in the charter is expressly defined as, "a sign, signal, marking or device . . . which is designed and intended to regulate vehicular or pedestrian traffic." Charlotte, NC, Charter § 6.21(b) (1965).

The manual with specifications approved by the State Board of Transportation and referred to in the Charlotte Code Section 14-57(d) is the North Carolina Department of Transportation publication entitled "Traffic Signal Manual and Supplement to the MUTCD." Under a section captioned "1A-6, Legal Authority," the supplement states, "[A]ll traffic signals installed . . . shall be in substantial conformance with this manual and the MUTCD."

Plaintiffs have presented no evidence suggesting that the traffic signals installed at the intersection were not in compliance with the MUTCD and the North Carolina Traffic Signal Manual. In fact, all the evidence was to the contrary. Since the traffic signals existing at the intersection at the time of the accident were in proper working order and complied in every way with all requirements of the MUTCD, defendant was also in compliance with the Charlotte Code and the North Carolina Department of Transportation's Signal Manual and Supplement to the MUTCD.

Plaintiffs' reliance on *Jordan v. Jones*, 314 N.C. 106, 331 S.E.2d 662 (1985), is misplaced. In *Jordan*, the intersection had only a stop sign, which according to plaintiffs' evidence was not properly placed. *Jordan*, 314 N.C. at 108-9, 331 S.E.2d at 664. Since the intersection was part of the state highway system, the MUTCD applied and mandated signalization of an intersection after five or more accidents in a twelve month period. Unlike the situation in *Jordan*, in the instant case, there were no clear criteria promulgated by the MUTCD that the City failed to follow.

Finally, plaintiffs contend the City was negligent in failing to install the signal within a reasonable time after the decision to do so was made. Plaintiffs note that the City undertook various

## TALIAN v. CITY OF CHARLOTTE

[98 N.C. App. 281 (1990)]

evaluations and studies of the traffic and accident patterns at the intersection, and in December 1982 made the decision to install a left turn signal in "about a year." The signal was not installed until 31 July 1984. The uncontradicted evidence showed, however, that the projected installation of the left turn signal for the southbound lane of North Sharon Amity at Central Avenue was a part of the new Sharon Amity signal system. When bids were solicited, the City received only one bid. Therefore, by law the City was required to reinitiate the bidding process. Other than the fact that a delay beyond the projected target date occurred, plaintiffs have offered no evidence from which the jury could infer that the delay was unreasonable. Budgeting and setting priorities within. the restraints of budgetary limitations are elements of a municipality's exercise of discretion. Mere delay in meeting a recognized need does not, without more, establish that the delay was unreasonable or that the municipality abused its discretion.

The undisputed evidence of record showed that the traffic signal in place at the time of the collision complied with all requirements of federal, state, and local law and was in proper working order. Plaintiffs having failed to offer evidence legally sufficient to support a finding of negligence, the trial court did not err in granting a directed verdict for defendant.

No error.

Judge WELLS concurs.

Judge PHILLIPS dissents.

Judge PHILLIPS dissenting.

In my opinion the decisive point in the case is that in December, 1982 the City determined that the intersection was unsafe, but had not made the correction authorized eighteen months later when plaintiff's intestate was killed. Having made the determination the excuse of discretion is irrelevant. The question properly posed by the record is whether between the determination that additional signals were necessary and the accident more than a reasonable time went by without the improvement being made. In my opinion the question is one of fact that should have been submitted to the jury.