IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-1170

Filed 17 December 2024

Mecklenburg County, No. 22CVS12431

R. ANTHONY ORSBON, as Guardian ad Litem for PATRICIA BOSWORTH-JONES, Plaintiff,

v.

MATTHEW TAYLOR MILAZZO and CITY OF CHARLOTTE, Defendants.

Appeal by plaintiff from order entered 7 June 2023 by Judge Carla N. Archie in Mecklenburg County Superior Court. Heard in the Court of Appeals 28 May 2024.

*Comerford Chilson & Moser, LLP, by Zachary M. Harris, W. Thompson Comerford, and John A. Chilson, for plaintiff-appellant.*

*The Law Offices of Lori Keeton, by Lori R. Keeton, for defendants-appellees.*

*O'Malley Tunstall, PC, by Peter J. Tomasek, Amiee A. Nwabuike, for amicus curiae North Carolina Advocates for Justice.*

*White & Stradley, PLLC, by J. David Stradley, for amicus curiae North Carolina Advocates for Justice.*

*Cranfill Sumner LLP, by Steven A. Bader, for amicus curiae North Carolina Association of Defense Attorneys.*

FLOOD, Judge.

Plaintiff R. Anthony Orsbon appeals from the trial court's order granting Defendants Geoffrey Sloop and Saleem Barakzai's motion for judgment on the pleadings and Defendant City of Charlotte's motion for summary judgment. After

- 1 -

careful review, we conclude the trial court erred in granting Defendants Sloop and Barakzai's motion for judgment on the pleadings because Defendants Sloop and Barakzai are not public officials, and therefore not entitled to public official immunity. The trial court, however, did not err in granting Defendant City's motion for summary judgment, because there is no genuine issue of material fact, and Defendant City is entitled to judgment as a matter of law. We therefore affirm in part, reverse in part, and remand for further proceedings.

## I. <u>Factual and Procedural Background</u>

On 9 May 2021, Patricia Bosworth-Jones, a pedestrian, was crossing the intersection of Archdale Drive and Park South Drive in Charlotte, North Carolina (the "Intersection") via a marked crosswalk upon receiving a "Walk" signal. Defendant Matthew Taylor Milazzo, after stopping his vehicle on a red light at the Intersection, received a circular green light, turned left, and struck Bosworth-Jones in the marked crosswalk, causing devastating injuries, including a traumatic brain injury.

Prior to the accident, in July 2020, the Intersection received pedestrian signals and a crosswalk. The Intersection was designed so that the crosswalk "Walk" signal would turn on simultaneously with the circular green light for left turning traffic, a design contemplated by North Carolina law and the Manual on Uniform Traffic

Control Devices ("MUTCD").[1] Defendant Milazzo, following the accident, testified he did not understand that a circular green light meant turning vehicles must yield the right of way to oncoming traffic and pedestrians.

Between May 2010 and 2021, there were no pedestrian accidents at the Intersection, and only two left-turn accidents involving motor vehicles. On 30 October 2022, Defendant City received an online complaint about the Intersection, which requested "pedestrian cross walk timing to be adjusted to run when cars are not driving through [the I]ntersection[,]" expressing concern that "[i]ndividuals and families are put in danger when crossing the street while cars are turning into the same lane." In response to the complaint, Defendant Barakzai, Engineer Project Manager for Defendant City, based on his experience, installed a "no Turn on Red" sign at the Intersection, and no further complaints or additional communications following up on the complaint were received by Defendant City.

In 2019, Defendant City adopted its "Vision Zero Action Plan" (the "Action Plan") to address and eliminate serious traffic injuries and fatalities. The Action Plan included a tool, a Leading Pedestrian Interval ("LPI"), to help eliminate serious

---

[1] North Carolina law specifically requires drivers turning left on circular green lights to yield to pedestrians who lawfully cross the intersection: "When the traffic signal is emitting a steady green light, vehicles may proceed with due care through the intersection subject to the rights of pedestrians and other vehicles as may otherwise be provided by law." N.C. Gen. Stat. § 20-158(2a).

Section 4D.04 of the MUTCD states: "Vehicular traffic facing a CIRCULAR GREEN signal indication is permitted to proceed straight through or turn right or left or make a U-turn movement[.] Such vehicular traffic, including vehicles turning . . . left . . . shall yield the right-of-way to (a) Pedestrians lawfully within an associated crosswalk[.]"

pedestrian injuries and fatalities. LPIs are timing devices that give pedestrians a "Walk" signal several seconds before a driver gets a green light. Installation of LPIs at intersections is not required under any national standards or under the MUTCD. Defendant City, however, set a goal of installing LPIs at certain intersections during retiming of the intersections, which occurs every two years. Under the goal set by Defendant City, the Intersection was scheduled to have received an LPI at retiming in 2022.

On 28 July 2022, Plaintiff filed suit in Mecklenburg County Superior Court as guardian ad litem of Bosworth-Jones, asserting negligence as to Defendant Milazzo, and "[n]egligence as to [Defendant City], Defendant Sloop[, Senior Engineer Project Manager] (individually and in his official capacity), and Defendant Barakzai (individually and in his official capacity)." Plaintiff's theory of negligence was the failure to include an LPI at the crosswalk. In his complaint, Plaintiff also asserted that Defendant City had waived its governmental immunity. Prior to these events, in October 2009, the city council of Charlotte passed a resolution waiving Defendant City's sovereign immunity from civil liability in tort.

On 27 October 2020, Defendants filed a motion for judgment on the pleadings. On 3 January 2023, the matter came on for hearing in Mecklenburg County Superior Court, and by order entered 24 January 2023, the trial court granted Defendants Sloop and Barakzai's motion for judgment on the pleadings, finding they were public officials rather than public employees, but denied Defendant City's motion for

judgment on the pleadings. On 13 April 2023, Defendant City filed a motion for summary judgment, which came on for hearing on 24 May 2023 in Mecklenburg County Superior Court. By order entered 7 June 2023, the trial court granted Defendant City's motion for summary judgment, concluding that "there is no genuine issue as to any material fact, and Defendant City . . . is entitled to judgment as a matter of law." Plaintiff timely filed written notice of appeal from this order.

## II. Jurisdiction

This Court has jurisdiction to review Plaintiff's appeal as an appeal from a final judgment of a superior court, pursuant to N.C. Gen. Stat. § 7A-27(b) (2023).

## III. Analysis

On appeal, Plaintiff alleges the trial court erred in: (A) granting judgment on the pleadings in favor of Defendants Sloop and Barakzai because Defendants Sloop and Barakzai are not public officials entitled to sovereign immunity, and (B) granting summary judgment in favor of Defendant City because there are genuine issues of material fact from which a jury could reasonably conclude Defendant City violated its duties to Bosworth-Jones. We address each argument, in turn.

### A. Motion for Judgment on the Pleadings

Plaintiff first argues that Defendants Sloop and Barakzai are not public officials, and therefore not entitled to public official immunity, because their positions were "neither created by statute nor the constitution, do[] not involve the use of

discretionary decision making, and do[] not exercise 'a legally significant portion of sovereign power in the performance of their duties.'" We agree.

"Judgment on the pleadings is appropriate where the pleadings fail to reveal any material issue of fact with only questions of law remaining." *Bauman v. Pasquotank Cnty. ABC Bd.*, 270 N.C. App. 640, 642, 842 S.E.2d 166, 168 (2020) (citation and internal quotation marks omitted). "Granting judgment on the pleadings is not favored by law and the trial court is required to view the facts and permissible inferences in the light most favorable to the nonmovant." *Id.* at 642, 842 S.E.2d at 168 (citation and internal quotation marks omitted).

"This Court reviews *de novo* a trial court's ruling on motions for judgment on the pleadings. Under a *de novo* standard of review, this Court considers the matter anew and freely substitutes its own judgment for that of the trial court." *Id.* at 642, 842 S.E.2d at 168 (citation omitted).

It has long been established that "[w]hen a governmental worker is sued individually, or in his or her personal capacity, our courts distinguish between public employees and public officers in determining negligence liability." *Reid v. Roberts*, 112 N.C. App. 222, 224, 435 S.E.2d 116, 119 (1993) (citation omitted). "[A] public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto." *Isenhour v. Hutto*, 350 N.C. 601, 609, 517 S.E.2d 121, 127 (1999). A public "employee, on the other hand, is personally liable for negligence in the

performance of his or her duties proximately causing an injury." *Id.* at 610, 517 S.E.2d at 127 (citation omitted). An individual will not enjoy public official immunity if his or her action "was (1) outside the scope of official authority, (2) done with malice, or (3) corrupt." *Bartley v. City of High Point*, 381 N.C. 287, 294, 873 S.E.2d 525, 533 (2022) (citation omitted).

Our Supreme Court has recognized "several basic distinctions between a public official and a public employee, including: (1) a public office is a position created by the constitution or statutes; (2) a public official exercises a portion of the sovereign power; and (3) a public official exercises discretion, while public employees perform ministerial duties." *Isenhour*, 350 N.C. at 610, 517 S.E.2d at 127. "Discretionary acts are those requiring personal deliberation, decision and judgment"; duties are ministerial when they are "absolute and involve merely the execution of a specific duty arising from fixed and designated facts." *Id.* at 610, 517 S.E.2d at 127 (citations and internal quotation marks omitted) (cleaned up). "Who[]ever is asserting public official immunity must show all three factors of the *Isenhour* test exist." *Baznik v. FCA US, LLC*, 280 N.C. App. 139, 142, 867 S.E.2d 334, 336 (2021).

A person occupies a position created by statute if the position "ha[s] a clear statutory basis." *Id.* at 142, 867 S.E.2d at 337 (citation omitted). If, however, "a statute expressly creates the authority to delegate a duty, [and the] person or organization who is delegated [a duty] . . . performs the duty on behalf of the person or organization in whom the statute vests the authority to delegate[,]" their position

is sufficient to meet the first of the three factors for a public official. *Cline v. James Bane Home Bldg., LLC,* 278 N.C. App. 12, 24, 862 S.E.2d 54, 63 (2021). Sovereign power can be exercised only if it is granted by statute or the North Carolina Constitution: "a defendant claiming themself a public official for immunity purposes must show that they have exercised a portion of some power that only the sovereign may exercise, as granted to the sovereign by either the Constitution or a statute." *McCullers v. Lewis*, 265 N.C. App. 216, 224–25, 828 S.E.2d 524, 533 (2019).

In *Cline*, this Court considered on first impression whether an "Environmental Health Administrator" was a position created by statute, and held the defendant failed to establish the position was created by statute because the statute did not "provide a clear statutory basis for the position . . . nor allow a person or organization created by statute to delegate any statutory duties to [the position]." 278 N.C. App. at 23, 25–26, 862 S.E.2d at 63, 65. In *Baznik*, this Court considered whether a North Carolina Department of Transportation ("NCDOT") "Division Traffic Engineer" and a "Division Sign Supervisor" held positions created by statute, and held that the statutes presented by the defendant did not delegate "statutory authority to employees of NCDOT." 280 N.C. App. at 143, 867 S.E.2d at 337.

Relevant to this matter before us, North Carolina law provides that "[a] city shall have general authority and control over all public streets [and] sidewalks[.]" N.C. Gen. Stat. § 160A-296(a) (2023). The Charlotte City Code of Ordinances authorizes the director to:

> Determine and provide for the installation, removal, relocation and change of official traffic control devices in accordance with accepted traffic engineering principles and standards. All traffic control devices shall conform to the manual and specifications approved by the state board of transportation or a resolution adopted by the city council. All traffic control devices so erected and not inconsistent with the provisions of state law or this chapter shall be official traffic control devices.

Charlotte, N.C., Code of Ordinances § 14-36(1) (2024).

Here, Defendants failed to present a statute that creates the positions held by Defendants Sloop, Senior Engineer Project Manager, or Barakzai, Engineer Project Manager, or one that "delegates such statutory authority to employees," because Ordinance § 14-36 fails to create the positions held by Defendants Sloop and Barakzai or delegate statutory authority to them. *See Baznik*, 280 N.C. App. at 143, 867 S.E.2d at 337; *Cline*, 278 N.C. App. at 25, 862 S.E.2d at 65; *cf. Baker v. Smith*, 224 N.C. App. 423, 428–30, 737 S.E.2d 144, 148–49 (2012) (holding that an assistant jailer has a delegated statutory authority where the constitutionally-created Sheriff has the authority to "appoint a deputy or employ others to assist him in performing his official duties" (emphasis omitted)). Further, because Defendants have failed to demonstrate the positions held by Defendants Sloop and Barakzai were created by statute, they cannot have exercised a portion of sovereign power. *See McCullers*, 265 N.C. App. at 224–25, 828 S.E.2d at 533; *Baznik*, 280 N.C. App. at 143, 867 S.E.2d at 337. Neither the first nor second factor of the *Isenhour* test was met, and we need not reach the third factor. *See* 350 N.C. at 610, 517 S.E.2d at 127; *see also Cline*, 278 N.C. App. at

26, 862 S.E.2d at 65 ("As the first factor is not met, we need not reach the other two *Isenhour* factors.").

Because Defendants have not shown that "all three factors of the *Isenhour* test" were met, Defendants have failed to demonstrate that Defendants Sloop and Barakzai are public officials subject to public official immunity.[2] *Baznik,* 280 N.C. App. at 142, 867 S.E.2d at 336; *see Isenhour*, 350 N.C. at 609–10, 517 S.E.2d at 127. Accordingly, the trial court erred in holding Defendants Sloop and Barakzai enjoyed public official immunity. *See McCullers,* 265 N.C. App. at 224–25, 828 S.E.2d at 533; *Baznik*, 280 N.C. App. at 143, 867 S.E.2d at 337.

## B. Summary Judgment

Plaintiff next contends the trial court erred in granting summary judgment in favor of Defendant City because "there are genuine disputes of material fact from which a jury could reasonably conclude that [Defendant City] . . . breached the duty it owed to . . . Bosworth-Jones . . . by instructing her to cross into a dangerous situation." We disagree.

The "standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that there is no genuine issue

---

[2] Defendants, citing to *Reid*, suggest that even if Defendants Sloop and Barakzai are public employees, they are not liable in their individual capacities because they did not "directly participate in the events that caused [Bosworth-Jones'] injuries[.]" The parties, however, did not argue Defendants Sloop's and Barakzai's liability in their individual capacities before the trial court. *See In re J.B.*, 257 N.C. App. 299, 303, 809 S.E.2d 353, 356 (2018) ("A contention not raised at the trial court may not generally be raised for the first time on appeal.").

as to any material fact and that any party is entitled to a judgment as a matter of law." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (internal quotation marks omitted). "When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party." *Id.* at 573, 669 S.E.2d at 576.

To make out a *prima facie* case of negligence, "a plaintiff must show that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant's conduct breached that duty; (3) the breach was the actual and proximate cause of the plaintiff's injury; and (4) damages resulted from the injury." *Parker v. Town of Erwin*, 243 N.C. App. 84, 110, 776 S.E.2d 710, 729–30 (2015) (citation omitted). Because Defendant City did not breach its duty to Bosworth-Jones nor did it proximately cause her injuries, Plaintiff cannot show that Defendant City was negligent.

### 1. Breach of Duty of Care

Plaintiff argues Defendant City breached its duty of care to Bosworth-Jones "to reasonably install and maintain the pedestrian signal by instructing her to cross into a dangerous situation."

"Any city is authorized to waive its immunity from civil liability in tort by the act of purchasing liability insurance." *Wilkerson v. Norfolk S. Ry. Co.*, 151 N.C. App. 332, 340, 566 S.E.2d 104, 110 (2002) (citation omitted) (cleaned up). "If a plaintiff does not allege a waiver of immunity by the purchase of insurance, the plaintiff has failed to state a claim against the governmental unit." *Id.* at 341, 566 S.E.2d at 110

(citation omitted).

A city "shall have general authority and control over all public streets, sidewalks, alleys, bridges[,]" and that authority and control includes "(1) [t]he duty to keep the public streets, sidewalks, alleys, and bridges in proper repair[,]" and "(2) [t]he duty to keep the public streets, sidewalks, alleys, and bridges open for travel and free from unnecessary obstructions[.]" N.C. Gen. Stat. § 160A-296(a), (a)(1)—(2) (2023).

"[A] municipality which is under a duty to conform its traffic control devices to the MUTCD and which has also waived immunity for civil liability in tort is subject to possible liability for designing or installing a traffic control device not in substantial conformity with MUTCD specifications." *Lonon v. Talbert*, 103 N.C. App. 686, 692, 407 S.E.2d 276, 281 (1991). Generally, however, "[a]bsent a statute imposing liability, cities acting in the exercise of police power . . . conferred by their charters or by statute, and when discharging a duty imposed solely for the public benefit . . . are not liable for the tortious acts of their officers or agents." *Id.* at 691, 407 S.E.2d at 280 (citation and internal quotation marks omitted). The "installation, maintenance and timing of traffic control signals at intersections are *discretionary* governmental functions[,]" and where traffic signals are in compliance with controlling authorities, a city is not under an "obligation" to make discretionary changes to improve safety that were not otherwise required. *Talian v. City of Charlotte*, 98 N.C. App. 281, 286–87, 390 S.E.2d 737, 741 (1990) (emphasis added);

*see also Cooper v. Town of Southern Pines*, 58 N.C. App. 170, 173–74, 293 S.E.2d 235, 236–37 (1982) (holding that a municipality is not negligent when, absent an abuse of discretion, it exercises a discretionary power).

In *Talian*, the plaintiffs brought suit against the city of Charlotte for damages arising out of a traffic accident, arguing the city of Charlotte negligently failed "to install a protected left turn signal" at the intersection where the accident occurred. 98 N.C. App. at 283, 390 S.E.2d at 738. This Court found that "[t]he undisputed evidence of record showed that the traffic signal in place at the time of the collision complied with all requirements of federal, state, and local law and was in proper working order[,]" and that the plaintiffs "failed to offer evidence legally sufficient to support a finding of negligence[.]" *Id.* at 289, 390 S.E.2d at 742. This Court also addressed the plaintiffs' argument that failure to install a new signal within a reasonable time "after the decision to do so was made" constituted negligence, concluding that a "[m]ere delay in meeting a recognized need does not, without more, establish that the delay was unreasonable[.]" *Id.* at 288–89, 390 S.E.2d at 742. This Court concluded that, as a result, the "trial court did not err in granting a directed verdict for [the] defendant." *Id.* at 289, 390 S.E.2d at 742.

Here, Plaintiff correctly alleged that Defendant City "has waived any and all such governmental and/or sovereign immunity . . . by the act of purchasing (or otherwise procuring, obtaining, or having in place) liability insurance[.]" *See Wilkerson*, 151 N.C. App. at 340, 566 S.E.2d at 110. Thus, Defendant City could in

theory be held liable for negligence towards Plaintiff. *See id.* at 340, 566 S.E.2d at 110. It is undisputed, however, that LPIs are optional under the MUTCD. Just as the Court in *Talian* found that the traffic signals "were in proper working order and complied in every way with all requirements of the MUTCD," so here has Plaintiff presented no evidence the traffic signals installed at the Intersection were not in compliance with the MUTCD or the North Carolina Traffic Signal Manual at the time of the accident. *See* 98 N.C. App. at 288, 390 S.E.2d at 741. Furthermore, just as the Court in *Talian* held that the plaintiffs "failed to offer evidence legally sufficient to support a finding of negligence," because the evidence demonstrated that the traffic signal "complied with all requirements of federal, state, and local law[,]" so here has Plaintiff failed to offer evidence legally sufficient to support a finding of negligence by Defendant City. *See id.* at 289, 390 S.E.2d at 742.

Additionally, Defendant City did not delay in installing the LPI, much less unreasonably delay in doing so. In *Talian*, the left turn signal was to be installed "in about a year" from December 1982, but its installation was delayed until July 1984, about one month after the accident. *Id.* at 283–84, 288–89, 390 S.E.2d at 739, 742. Here, by contrast, the LPI was scheduled to be installed at retiming in 2022, about one year after the accident, but its installation was in fact *moved up* following the

accident.[3]  *See id.* at 288–89, 390 S.E.2d at 742.  Defendant City's decision to install LPIs at retiming rather than upon initial installation of a new signal, or even following a resident's complaint about an intersection, was reasonable, because the decision ensured the LPI installation projects were completed in an organized fashion and allowed for intersection timing data to be collected concurrent with installation. The decision here to install the LPI at retiming was a component of Defendant City's "exercise of discretion[,]" and even had there been a delay in installing the LPI, such "[m]ere delay [by Defendant City] in meeting a recognized need d[id] not, without more, establish that the delay was unreasonable[.]"  *See id.* at 289, 390 S.E.2d at 742.

Plaintiff has not presented evidence "from which the jury could infer that the delay was unreasonable[,]" and so, just as in *Talian*, Plaintiff cannot establish Defendant City's negligence.  *See id.* at 289, 390 S.E.2d at 742.  Accordingly, because the Intersection was MUTCD compliant at the time of the accident, and Defendant City did not delay in installing the LPI, much less unreasonably delay in doing so, Defendant City did not breach a duty towards Plaintiff.  *See id.* at 287, 390 S.E.2d at 741.

## 2. Proximate Cause

---

[3] Although Defendant City installed an LPI at the Intersection nine days after the accident, Defendant City should not be penalized for choosing to install an optional traffic safety device ahead of schedule and in response to an accident.  *See, e.g.*, N.C.R. Evid. 407 advisory committee's note (discussing the policy of excluding "evidence of subsequent remedial measures as proof of an admission of fault[,]" explaining that "evidence of . . . installation of safety devices" should be excluded because of the "social policy of encouraging people to take, or at least not to discourage them from taking, steps in furtherance of added safety").

Even if Defendant City owed a duty to Plaintiff, neither the Intersection design, the resident's complaint, nor Defendant City's response to the resident's complaint were the proximate cause of Bosworth-Jones' injuries. To prove proximate cause, a plaintiff must show that the injury would not have occurred but for the defendant's negligence. *Liller v. Quick Stop Food Mart, Inc.*, 131 N.C. App. 619, 624, 507 S.E.2d 602, 606 (1998). "Foreseeable injury is a requisite of proximate cause, which is, in turn, a requisite for actionable negligence." *Thornton v. F.J. Cherry Hosp.*, 183 N.C. App. 177, 182, 644 S.E.2d 369, 373 (2007) (citation omitted). To prove foreseeability, a plaintiff must show "that consequences of a generally injurious nature might have been expected." *Id.* at 182, 644 S.E.2d at 373 (citation omitted).

Here, for ten years prior to the date of the accident, there had been only two left turn, motor-vehicle related accidents. There were no pedestrian accidents during that time, nor between the time the crosswalk was completed in mid-2020 and the accident in this case. Although Defendant City received a complaint about "walk timing" at the Intersection, this single complaint does not reasonably indicate "consequences of a generally injurious nature" were to be expected, meaning that Plaintiff failed to prove Bosworth-Jones' injuries were foreseeable. *See id.* at 182, 644 S.E.2d at 373. Defendant Barakzai nonetheless quickly addressed the complaint by installing a "no Turn on Red" sign within three days of receiving the complaint, and no further complaints or additional communications following up on the resident's

complaint were received by Defendant City.[4]  Moreover, Bosworth-Jones was injured when Defendant Milazzo failed to yield to the pedestrian in the crosswalk while making a left hand turn on a circular green light; therefore, Defendant Milazzo's negligence—not Defendant City's—was the proximate cause of Bosworth-Jones' injuries.  *See Liller*, 131 N.C. App. at 624, 507 S.E.2d at 606.

Defendant City did not create an overly dangerous situation, as the Intersection design was contemplated by both MUTCD and under North Carolina law.  *See* N.C. Gen. Stat. § 20–158(b)(2a) (2023).  Thus, neither the Intersection design, the resident's complaint, nor Defendant City's response to the complaint was the proximate cause of Bosworth-Jones' injuries.  *See Liller*, 131 N.C. App. at 624, 507 S.E.2d at 606.

Viewing the evidence in the light most favorable to Plaintiff, there is no genuine issue of material fact—Defendant City had no legal requirement to exercise a discretionary function in installing an LPI, it did not delay in installing the LPI, Defendant Barakzai did not delay in addressing the resident's complaint, and Bosworth-Jones was injured due to Defendant Milazzo's negligence in failing to yield.  *See In re Will of Jones*, 362 N.C. at 573, 669 S.E.2d at 576.  Defendant City is entitled

---

[4] Defendant Barakzai's quick response in addressing the resident's complaint by installing a "no Turn on Red" sign, based on Defendant Barakzai's experience that installing the sign would address the resident's complaint, further demonstrates Defendant City did not delay in addressing a danger the Intersection might have posed to pedestrians.  *See Talian*, 98 N.C. App. at 289, 390 S.E.2d at 742.

to judgment as a matter of law because it breached no duty to Bosworth-Jones, and even if it had breached a duty, it did not proximately cause her injuries. *See id.* at 573, 669 S.E.2d at 576. Accordingly, because there is no genuine issue of material fact, and Defendant City is entitled to judgment as a matter of law, the trial court did not err in granting summary judgment in favor of Defendant City. *See id.* at 573, 669 S.E.2d at 576.

## IV. <u>Conclusion</u>

The trial court erred in granting its judgment on the pleadings in favor of Defendants Sloop and Barakzai because Defendants Sloop and Barakzai are not public officials, and therefore not entitled to public official immunity. The trial court did not err, however, in granting summary judgment to Defendant City as, irrespective of its waiver of governmental immunity, there is no genuine issue of material fact, and Defendant City is entitled to a judgment as a matter of law. We therefore remand the trial court's order as to the judgment on the pleadings and affirm the trial court's order as to the granting of the motion for summary judgment.

AFFIRMED In Part; REVERSED AND REMANDED In Part.

Judge GRIFFIN concurs.

Judge THOMPSON dissents in separate opinion.

THOMPSON, Judge, dissenting.

Failure to comply with the Manual on Uniform Traffic Control Devices (MUTCD) is not the *only* way by which a city that has waived its governmental immunity in tort can be liable for negligence. The majority's conclusion that, "because the [i]ntersection was MUTCD compliant at the time of the accident, and [d]efendant [Charlotte] did not delay in installing the LPI, much less unreasonably delay in doing so, [d]efendant [Charlotte] did not breach a duty towards [p]laintiff[,]" is not an appropriate determination for this court at the summary judgment stage.

Because I would conclude that plaintiff has stated facts that, when viewed in the light most favorable to plaintiff, raise genuine issues of material fact—specifically, whether defendant City of Charlotte's (defendant Charlotte) delay in correcting the dangerous conditions posed by the crosswalk timing for approximately seven months *after* defendant Charlotte was notified of the danger the crosswalk posed was *reasonable*—I would conclude that the trial court erred in granting defendant Charlotte's motion for summary judgment, and I respectfully dissent.

In order to bring a prima facie claim for negligence, a plaintiff must show (1) defendant owed a duty to the plaintiff, (2) defendant breached the duty, (3) the breach constituted the actual and proximate cause of plaintiff's injury, and (4) plaintiff suffered damages as a result of the breach. *Cucina v. Jacksonville*, 138 N.C. App. 99, 102, 530 S.E.2d 353, 355 (2000). Generally, "[a]bsent a statute imposing liability,

cities acting in the exercise of police power, or judicial, discretionary, or legislative authority, conferred by their charters or by statute, and when discharging a duty imposed solely for the public benefit are not liable for the tortious acts of their officers or agents." *Lonon v. Talbert*, 103 N.C. App. 686, 691, 407 S.E.2d 276, 280 (1991) (internal quotation marks, ellipsis, and citation omitted). Simply because "a city has authority to make discretionary decisions does not mean the city is thereby under any obligation[;] [a]uthority or power to control traffic does not create a mandate of action." *Id.*

However, "[a] city may waive its immunity from civil liability in tort by purchasing liability insurance." *Id.* Similarly, "[a]s to traffic control devices, a governmental subdivision [that] has waived immunity from civil liability in tort may be liable for its negligent failure to conform to a published standard such as the Manual on Uniform Traffic Control Devices." *Id.* at 692, 407 S.E.2d at 280. "With respect to state roads within municipal corporate limits, traffic signs, signals, markings, islands, and all other traffic[ ]control devices must be installed or erected in substantial conformance with the specifications of the MUTCD." *Id.* "[A] municipality [that] is under a duty to conform its traffic control devices to the MUTCD and which has also waived immunity for civil liability in tort is subject to possible liability for designing or installing a traffic control device not in substantial conformity with MUTCD specifications." *Id.* at 692, 407 S.E.2d at 281.

Here, defendant Charlotte did not have a mandate or warrant in the MUTCD

regarding Leading Pedestrian Intervals (LPIs). As the majority correctly identifies, plaintiff has not pled facts that demonstrate defendant Charlotte was not in "substantial conformity" with the MUTCD. In fact, defendants *were* in "substantial conformity with MUTCD specifications[,]" *id.*, and if non-compliance with the MUTCD was the only means by which defendant Charlotte could be found liable for negligence, our analysis would end here.

However, in *Talian v. City of Charlotte*, our Court's analysis of whether summary judgment was appropriate *did not end* with a determination of whether the defendant, ironically *also* the City of Charlotte, had been in "substantial conformity" with the MUTCD; the defendant was in conformity with the MUTCD. *Talian*, 98 N.C. App. 281, 288, 390 S.E.2d 737, 741 (1990). After determining that the defendant *was* in conformity with the MUTCD, our Court *then* considered whether the defendant was liable—not for their failure to comply with the MUTCD—but *whether their delay was unreasonable*, and thereby, *negligent. See id.* at 288–89, 390 S.E.2d at 742 (addressing plaintiff's argument that the defendant "was negligent in failing to [fix the dangerous condition] within a reasonable time after the decision to do so was made").

Here, as in *Talian*, our analysis of whether summary judgment was appropriate *should not* end with a determination of whether defendant Charlotte was in conformity with the MUTCD, which it was, but whether defendant Charlotte's delay in installing an LPI—which again, was *not required by the MUTCD*—after

being notified of the dangerous conditions that the crosswalk created was *reasonable*.

Again, simply because "a city has authority to make discretionary decisions does not mean the city is thereby under any obligation[;] [a]uthority or power to control traffic does not create a mandate of action." *Lonon*, 103 N.C. App. at 691, 407 S.E.2d at 280. Similarly, in the exercise of discretionary governmental functions, "[m]ere delay in meeting a recognized need does not, without more, establish that the delay was unreasonable or that the municipality abused its discretion." *Talian*, 98 N.C. App. at 289, 390 S.E.2d at 742. However, it is fundamental that, "[u]pon notice of defects and dangers in the streets, the city must remove them in a reasonable time, and *failure to do so is negligence*, and such negligence is the basis of an action by anyone injured by reason thereof." *Jones v. Greensboro*, 124 N.C. 310, 310, 32 S.E. 675, 676 (1899) (emphasis added).

In *Talian*, much like the present case, the majority concluded that, "[t]he undisputed evidence of record showed that the traffic signal in place at the time of the collision complied with all requirements of federal, state, and local law and was in proper working order" and therefore, "the trial court did not err in granting a directed verdict for defendant." *Talian*, 98 N.C. App. at 289, 390 S.E.2d at 742. However, Judge Phillips offered a dissenting opinion, wherein he argued that, "[t]he question properly posed by the record is whether between the determination that additional signals were necessary and the accident[,] *more than a reasonable time went by without the improvement being made*. In my opinion the question is one of

fact that should have been submitted to the jury." *Id.* (emphasis added) (Phillips, J., dissenting). I concur with Judge Phillips and apply the same reasoning to the case at bar.

In his complaint, plaintiff alleged that defendant Charlotte, "by and through its agents and employees . . . had a duty to exercise ordinary care for the safety of the general public, including Ms. Bosworth-Jones, in the design of the crosswalk and signal timing . . . and *in its response to the resident's complaint that the intersection was unsafe for pedestrians*." (Emphasis added). Moreover, the complaint also alleged, *inter alia*, that, "[d]efendants Sloop and Barakzai . . . *in their official capacities*, and as agents and employees of [defendant Charlotte], failed to implement an LPI *after being placed on notice of the danger to pedestrians that the signal timing caused*" and "failed to separate the pedestrian phase from the traffic phase of the signal timing *after being placed on notice that the intersection was dangerous for pedestrians . . . .*" (Emphases added).

Plaintiff alleged that, "[a]s a direct, proximate, and reasonably foreseeable result of the negligence of [defendant Charlotte], by and through its agents and employees . . . [Ms. Bosworth-Jones] suffered severe, lifelong, and debilitating injuries." Finally, in the complaint, plaintiff alleged that defendant Charlotte "has waived any and all such governmental and/or sovereign immunity . . . by the act of purchasing (or otherwise procuring, obtaining, or having in place) liability

insurance . . . ."[5]

Indeed, on 31 October 2020, defendant Charlotte was warned by a local resident that "individuals and families are put in danger when crossing the street [at issue in the present case] while cars are turning into the same lane" and requested "the pedestrian [crosswalk] timing to be adjusted to run when cars are not driving through [the] intersection." As plaintiff notes in his appellate brief, defendant Charlotte "chose to leave the crossing unsafe" while "[t]he fix to correct the danger was simple and *could be quickly implemented with little to no cost*." (Emphasis added).

Plaintiff's theory of negligence in the present case was not that defendant Charlotte failed to comply with the MUTCD, but that defendant Charlotte had a duty to exercise ordinary care, and defendant Charlotte breached that duty by "fail[ing] to implement an LPI *after being placed on notice of the danger to pedestrians that the signal timing caused*" and by "fail[ing] to separate the pedestrian phase from the traffic phase of the signal timing *after being placed on notice that the intersection was dangerous for pedestrians* . . . ." (Emphases added).

The majority then asserts that "[e]ven if [d]efendant [Charlotte] owed a duty to [p]laintiff, neither the [i]ntersection design, the resident's complaint, nor [d]efendant [Charlotte]'s response to the resident's complaint were the proximate cause of [Ms. Bosworth-Jones]'s injuries." Moreover, the majority claims that

---

[5] I also note that any reference to the MUTCD is entirely absent from plaintiff's complaint.

"[a]lthough [d]efendant [Charlotte] received a complaint about 'walk timing' at the [i]ntersection, this single complaint does not reasonably indicate 'consequences of a generally injurious nature' were to be expected, meaning that [p]laintiff failed to prove Bosworth-Jones'[s] injur[ies] were foreseeable." Finally, they assert that defendant Charlotte "did not delay in installing the LPI, *much less unreasonably delay in doing so.*"

To support their contentions that there was no foreseeability (and in turn, no proximate cause), the majority claims that, "for ten years prior to the date of the accident, there had been only two left turn, motor-vehicle related accidents [at the intersection, and] [t]here were no pedestrian accidents during that time, nor between the time the crosswalk was completed in mid-2020 and the accident in this case." In reality, the crosswalk project did not begin until 2017, and the *design* for the crosswalk at the intersection, which plaintiff contends in his complaint, "created a trap for pedestrians using the crosswalk exactly as they were directed[,]" was not completed until March 2019. The crosswalk itself *was not completed until* "July 2020."

As the majority notes, for ten years prior to the accident "[t]here were no pedestrian accidents [at the intersection,]" and then, *less than a year after* the crosswalk was completed in mid-2020, Ms. Bosworth-Jones was struck by a vehicle while using the crosswalk. The difference between the timeframe where there *were no* pedestrian accidents at the intersection and when there *was* a pedestrian accident at the intersection: *the crosswalk at the intersection*. If anything, the fact that there

were no pedestrian accidents at the intersection for *ten years*, and then *seven months* after the crosswalk was completed, Ms. Bosworth-Jones was struck by a vehicle—*is further evidence* of the foreseeability of the harm in this case—that a pedestrian, using the newly created crosswalk *as it was designed*, would be struck and seriously injured by a vehicle entering the intersection due to the crosswalk's timing mechanism.

For *seven* of the *ten* months after the crosswalk was completed, from 31 October 2020 until 9 May 2021 when the accident occurred, defendant Charlotte was on notice that "[i]ndividuals and families are put in danger when crossing the street while cars are turning into the same lane" and that a citizen had requested that the "*crosswalk timing be adjusted* to run when cars are not driving through [the] intersection[,]" (emphasis added). It was at this point, "[u]pon notice of defects and dangers in the streets[,]" *Jones*, 124 N.C. at 676, that defendant Charlotte's duty to correct the dangerous condition arose, but defendant Charlotte failed to correct the dangerous condition by adjusting the crosswalk timing. Instead, they installed a no right turn on red sign that did not address the "crosswalk timing" noted in the complaint.[6]

Finally, the majority asserts on several occasions that defendant Charlotte's "[m]ere delay in meeting a recognized need does not, without more, establish that the delay was unreasonable[,]" that defendant Charlotte "did not delay in installing an

---

[6] It should also be noted that "[n]ine days after the collision, [defendant Charlotte] installed a five-second LPI at the intersection."

LPI, much less unreasonably delay in doing so[,]" and that plaintiff "has not presented evidence 'from which the jury could infer that the delay was unreasonable.'" However, "[i]n this jurisdiction, questions of proximate cause and insulating negligence *are for the jury except in cases so clear* there can be no two opinions among men of fair minds whether the intervening act and the resultant injury were such that the author of *the original wrong* could reasonably have expected them to occur as a result of his own negligent act." *Lonon*, 103 N.C. App. at 695–96, 407 S.E.2d at 282 (internal quotation marks, ellipsis, and citation omitted) (emphases added).

This is not a case so clear, and determinations about the *reasonableness* of defendant Charlotte's actions are not appropriate for this Court at the *summary judgment stage* of a negligence action.[7] Plaintiff did not just assert that defendant had simply delayed in meeting a recognized need, he also asserted that defendant Charlotte's response to the complaint, by installing a no turn on red signal, did not address the harm identified by the complaint: *crosswalk timing*.

Upon my review, viewing the evidence "in [the] light most favorable to the non-moving party[,]" *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 575, 576, I would

---

[7] Moreover, this "mere delay" of seven months resulted in "broken bones, fractured ribs, severe lacerations, a dislocated shoulder, and, most significantly, a permanent, traumatic, and debilitating brain injury[,]" to an individual who was utilizing the crosswalk, created just *seven months earlier, exactly how she was supposed to*. The delay in correcting the dangerous condition here was not *per se* reasonable simply because of the fact that it constituted less time than the delay in *Talian*. Reasonableness is a question of fact for the jury.

conclude that plaintiff's allegation that defendant Charlotte negligently "failed to separate the pedestrian phase from the traffic phase of the signal timing after being placed on notice that the intersection was dangerous for pedestrians[,]" raised a question of material fact: whether defendant Charlotte was *unreasonable* in its delay in correcting the dangerous conditions in the roadway that were created by the crosswalk, after being notified *seven months earlier* that the crosswalk was dangerous to pedestrians.

"Summary judgment is an extreme remedy and should only be awarded where the truth is quite clear[;] . . . [it] is rarely appropriate in negligence cases[,]" *Nick v. Baker*, 125 N.C. App. 568, 570–71, 481 S.E.2d 412, 414 (1997), and I would posit that the question properly posed by the record is—between the determination that there were dangerous conditions in the roadway created by the crosswalk and the accident—whether more than a reasonable time went by without correcting the dangerous condition. "In my opinion[,] the question is one of fact that should have [survived summary judgment]." *Talian*, 98 N.C App. at 289, 390 S.E.2d at 742 (Phillips, J., dissenting). For these reasons, I would conclude that the trial court erred in granting summary judgment to defendant Charlotte, and I respectfully dissent.